## Texas & New Orleans Railroad Company v. W. W. Clippenger et al.

Decided November 19, 1907.

**1.—Pleading—Amendment—Limitation.**

In a suit for personal injuries original and amended petition compared and held to state the same cause of action, and hence an exception setting up the statute of limitation was properly overruled.

**2.—Brief—Insufficient Statement.**

Under an assignment of error that the court erred in refusing to give a peremptory instruction for the defendant, a statement simply that "there was no affirmative proof showing how the wreck was caused," does not exclude the idea that there was some evidence showing that the wreck was caused in the manner alleged by the plaintiff, and a failure to set out such evidence absolves the Appellate Court from the duty of considering the assignment.

**3.—Derailment—Speed of Train—Evidence.**

Where, as one of the elements of negligence causing a derailment, plaintiff alleges that the defendant ran its train at a high, excessive and dangerous rate of speed over a switch, evidence as to the speed of the train at the time and place of the derailment, was relevant and material.

**4.—Pain—Evidence of.**

In a suit for damages for personal injuries a nonexpert witness, in this case, the husband of the injured party, may give his opinion as to the suffering experienced by his wife.

**5.—Expenses—Reasonableness—Testimony of Nonresident.**

*Physicians residing in Texas may testify to the reasonableness of expenditures for medicines and medical supplies in another State.*  The fact

that the witnesses did not reside in the State where the expenditures were made only affected the weight of their testimony.

### 6.—Crossing Switch—Rate of Speed—Negligence.

While the law does not fix the rate of speed at which a train may be run through a switch, still when the issue is made by the pleadings that a wreck was caused by running a train through a switch at an excessive rate of speed, it is pertinent to the issue to enquire whether or not defendant's train at the time of the accident was being run at a greater rate of speed than was prudent under the circumstances.

### 7.—Same.

In a suit for personal injuries caused by the derailment of a railway train at a switch, evidence considered, and held to show in and of itself that defendant was guilty of negligence.

### 8.—Charge—Statement of Issues—Submission of Issues.

A distinction should be observed between a mere statement by the court of the issues made by the pleadings, and the submission of issues to the jury. A statement by the court of an issue made by the pleadings is not cause for reversal when, there being no evidence to support the issue, the court does not submit the issue to the jury.

Appeal from the District Court of Jefferson County. Tried below before Hon. W. H. Pope.

*Baker, Botts, Parker & Garwood* and *Chester & DaPonte,* for appellant.

*Teagle & Conley,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—This was a suit by appellee, W. W. Clippenger, against the appellant, Texas & New Orleans Railroad Company, to recover damages for personal injuries sustained by his wife, Helen Clippenger, on the 18th day of November, 1902, while a passenger on one of its trains. The suit was commenced by the filing of the original petition November 16, 1904, and was tried on the second amended original petition, filed November 14, 1906. The case was tried before a jury and resulted in a verdict for appellee. From an order overruling a motion for new trial the cause is brought before us on appeal.

The petition of the plaintiff, after the necessary formal allegations, contained the following:

"That heretofore, to wit, on the 18th day of November, A. D. 1902, plaintiffs were on board one of defendant's regular passenger trains, having paid for two first-class full-fare tickets, and while so en route between the town of Liberty, in Liberty County, Texas, and the town of Houston, in Harris County, Texas, and, as plaintiffs are informed and believe, near the town of Devers, in Liberty County, Texas, a collision occurred between the train upon which plaintiffs were riding and another train of defendant's coming in the opposite direction; that said two trains in so colliding crashed into each other with great force, wrecking and damaging a large part of each train, destroying a number of cars and wrecking a number of cars in each train. That said collision of said trains and the injuries inflicted on the said plaintiff

was caused by the negligence of the defendant company in negligently causing, permitting or allowing its said trains to collide in the manner and at the time hereinbefore stated; that plaintiffs are informed and believe that said collision was caused by the negligence of the servants, agents and employes in charge of the said trains, in carelessly and negligently handling said trains, and in propelling the same at a high rate of speed while attempting to pass each other; and was further caused by the said railroad company negligently and carelessly maintaining a defective and improperly constructed switch at the point where the said wreck occurred, the said switch being so improperly constructed as to allow one of said trains, which was attempting to pass the other on the main line or track to enter the said switch on which the other train was standing and thus collide therewith, as before alleged."

The amended petition contained the following averments:

"That heretofore, to wit, on or about the 18th day of November, A. D. 1902, plaintiff, with his wife, Helen L. Clippenger, were lawful passengers for hire on defendant's railroad, having theretofore purchased two tickets entitling them to passage on one of defendant's trains, said tickets being two first-class tickets reading from Houston, Texas, to Beaumont, Texas, plaintiff paying therefor the full price demanded by the agent for said company, and being the usual and proper charge made by defendant company for transporting passengers from the city of Houston to the city of Beaumont, whereby the defendant company undertook and bound themselves to safely transport the plaintiff and his said wife to their destination; that plaintiff and his said wife on said date boarded one of the regular passenger trains of the said company, leaving the city of Houston, Texas, about 8:30 o'clock a. m., for the purpose of being transported to the city of Beaumont, and while so en route between said points, and as plaintiffs are informed and believe, at a point at or near the town of Devers, on the line of said road, the train upon which plaintiffs were riding, and while running at a high and dangerous rate of speed, suddenly left the track or rails of said road and ran in and upon a sidetrack or switch, and the engine attached to the said train then and there turned over, the mail car on said train was wrecked, and other cars on the said train were then and there wrecked and damaged; that the car in which plaintiff and his wife were riding was thrown from the rails and bounded over the ties for some distance, and the said car was thrown from its trucks and tipped to one side at an angle of about 45 degrees; that at the time of the said wreck the said train was going at a high and dangerous rate of speed, and did not slow up in its speed at said station, or before reaching the same. That the derailment of said train and the wrecking thereof was caused by the negligence of defendant, its servants, agents and employes in then and there running its said train at a high and dangerous rate of speed through the town of Devers and across the switch at said point, and in then and there allowing and permitting said tracks at said point to be and remain in a defective condition, and in negligently operating its said train at a dangerous rate of speed, and in then and there permitting the switch at the point of said accident to be and remain in a bad condition and defective in construction. And plaintiff further alleges that, in addi-

tion to all of the aforesaid defects and causes contributing to the wrecking of said train, that the defendant, its servants, agents and employes negligently and carelessly allowed said switch to remain open at the time of the passing of the said train, so as to allow the said train to enter the said switch and sidetrack with unusual force and speed, resulting in the wrecking of said train, as aforesaid. Plaintiff further alleges that one or more, or all of said causes, were the proximate cause of the said injuries, and the said injuries were so inflicted by defendant's negligence in one or more or all of said acts, without fault or negligence on the part of plaintiff or his said wife, and while said track and train were under the exclusive control and management and operation of the said defendants, its servants, agents and employes."

Defendant excepted to the amended petition on the ground that it appeared that the cause of action sought to be set up therein was barred by the two years' statute of limitations; and by a special charge, seasonably requested, sought to have the jury instructed to find for defendant because the undisputed proof showed that the plaintiff's cause of action was barred; and the refusal of the court to sustain the exception and to give the special charge is made the basis of appellant's first and second assignments of error.

If the cause of action set out in the amended petition was a new or different cause of action from that asserted in the original petition, it was barred at the time of the filing of the former. But if the amendment in any way retained, even as a part of the cause of action asserted by the original petition, and afterwards reasserted by the amended petition, it is sufficient to prevent the running of the statute after the original petition was filed. (Mexican, etc., Ry. Co. v. Mitten, 13 Texas Civ. App., 658.) By reference to the extracts from the original and amended petitions, above quoted, the following similarity will be observed. In both the accident is alleged to have occurred to one of defendant's passenger trains on the 18th day of November, 1902; in both petitions the accident is alleged to have occurred at the same point, viz., at or near the town of Devers, in Liberty County, Texas; in both it was alleged that the wreck was caused by said Railroad Company negligently and carelessly maintaining a defective and improperly constructed switch at a point where the wreck occurred, the said switch being so improperly constructed as to allow the train to enter the switch, resulting in the wreck; in both it is alleged that the defendant carelessly, negligently and recklessly operated the said train and propelled the same at a high and dangerous rate of speed; in both the injuries complained of are the same, and in both the alleged contract of carriage is the same. The only material change made in the amended pleading is that in it the pleader's misconception of the facts were corrected; and the allegation that when the train ran in upon the switch it collided with another train on the switch was eliminated. In both, however, it was charged that the wrecking of the train and the injury to plaintiff's wife were the result of the negligence of the defendant in the manner of the operation of the train and in maintaining a defective and improperly constructed switch. We are of opinion that the amended petition set up no new or different cause of action from

that alleged in the original petition, and the assignments are over-ruled. Mexican, etc., Ry. Co. v. Mitten, *supra;* Galveston, H. & S. A. Ry. Co. v. Perry, 38 Texas Civ. App., 81; Atchison T. & S. F. Ry. Co. v. Veale, 39 Texas Civ. App., 39; Southern Pac. Ry. Co. v. Wellington, 36 S. W. Rep., 1114.

By its third assignment appellant complains that the court erred in overruling the third ground of its motion for a new trial, in that the court committed error in refusing to give in charge to the jury its second special instruction, which is as follows: "You are instructed that there is no testimony tending to show that the derailment and wrecking of the train on which plaintiffs were passengers on or about November 18, 1902, was caused or occasioned by any of the things alleged in plaintiffs' petition, and you will therefore return a verdict for defendant."

The statement following this assignment is simply that "there was no *affirmative* proof showing how the wreck was caused." This statement does not purport to show that there was *no testimony* tending to show that the wreck was caused by any of the things alleged in plaintiff's petition, and we therefore decline to consider the assignment. But, should we waive this objection, we would still decline to consider the assignment because it is not in conformity to the rules of this court, which require the statement, following a proposition, to embrace, in substance, such proceedings, or a part thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with reference to the pages of the record. There may have been testimony other than affirmative testimony tending to sustain the allegations of the plaintiff's petition which would have justified the court in submitting the issues to the jury and in refusing to give the requested charge. It was clearly the duty of appellant, in framing its brief, to refer to the evidence relating to the proposition under discussion so that this court could determine whether the refusal of the trial judge to give the charge was error. For a like reason we refuse to consider appellant's fourth assignment, which complains of the action of the court in overruling the tenth ground of its motion for new trial. The tenth ground, as set out in the assignment, is as follows: "Because the evidence wholly failed to show that the derailment and wrecking of defendant's passenger train on which plaintiffs were riding was caused or occasioned by any of the negligent acts or omissions alleged in plaintiff's petition." The statement following the assignment simply refers us to the tenth ground of the motion, which is in the language above quoted, and to the statement under the third assignment, which we have shown above to be insufficient, and not in compliance with the rules.

The fifth, sixth and seventh assignments are predicated upon the refusal of the court to grant a new trial because of alleged errors in permitting the witnesses, Clippenger, Babcock and Whitlock, to testify as to the speed of the train at the time of its derailment and wreck; the grounds urged for its rejection being that such testimony was irrelevant and immaterial. The plaintiff, in his amended petition, charged, as one of the elements of negligence of appellant, which resulted in the wrecking of the train and the injuries sustained by the appellee's wife,

the running of the train at a high, excessive and dangerous rate of speed in and upon a sidetrack or switch at or near Devers, without slowing up or slacking its speed at said point, and the running of its said train at a high and dangerous rate of speed across the switch at said point, so as to permit the train to enter said switch and sidetrack with unusual force and speed. In view of these allegations, the inquiry as to the rate of speed of the train, as bearing upon the appellant's negligence in that regard, was both pertinent and material. The assignments are not sustained.

Appellant's eighth assignment is as follows: "The court erred in permitting the witness Clippenger to testify, over the objection of the defendant, as follows:

"Q. Did she suffer any physical pains after that, or appear to suffer any?

"Defendant objects as leading, and nothing but the opinion of the witness, also that this would be hearsay and self-serving. Court states witness can tell how she appeared. Defendant excepts.

"A. Yes, sir; it seemed to be intermittent. Some days she would feel very well and apparently free from pain, and maybe the next day, or within a few days, it would return—the pain would—and it seemed that when she would keep off her feet and lie down the pain would diminish and subside, so that she would feel very comfortable, and go that way for several days at a time, and then it would return again.

"Q. What would she have to do when those pains came on her?

"A. She would have to lie down and keep very quiet; she would generally sit in the room and lie down on the bed—not necessarily going to bed, but she would lie down and remain off her feet.

"Q. How long did that continue?

"A. That continued from the time of the wreck up to the time she returned to Cincinnati."

The proposition based on the above assignment is that "the testimony complained of was hearsay; an opinion by a nonexpert, based upon self-serving declarations made by the injured party, and was inadmissible."

We are of the opinion that there was no reversible error in admitting the testimony. The rule laid down by text writers, and which seems to have been followed in this State, is that "nonexpert witnesses may give their opinions on question of identity, resemblance, age, apparent condition of the body or mind, intoxication, insanity, sickness, health, etc. Such testimony is received in the particular cases or instances mentioned because a mere description, without the witness's opinion, would convey an imperfect idea of the force, meaning and inherent character of the things described." 1 Greenleaf on Ev., 13th ed., sec. 439; St. Louis S. F. Ry. Co. v. Smith, 14 Texas Ct. Rep., 379.

In the case cited a witness was permitted to testify that "plaintiff does not appear to be fifty percent as good a man now as he was before the injury." This testimony was objected to on the grounds that it was immaterial and irrelevant, the opinion of the witness not shown to be an expert on a matter given in expert form, and was too vague to form the basis of evidence. In passing upon this objection the court says: "The minute appearances indicating appellee's physical condi-

tion before and after he was injured, observed by the witness, and upon which his opinion, as expressed, was formed, could not be so described by him as to enable the jury, without such opinion, to draw a just or correct conclusion with respect to the issue to which the testimony related. In such case the inference or opinion of the witness may be stated." The assignment is overruled.

In charging upon the measure of damages the court instructed the jury that they might take into consideration the reasonable value of medicine and medical supplies furnished by appellee, if any was rendered necessary by reason of the injuries sustained by his wife. This charge is made the basis of appellant's ninth assignment, the objection to it being that there was no proof that the sums so expended were reasonable or necessary. The testimony showed that the expenditures for medicine and medical supplies covered a period from January 4, 1903, to the time of trial, and amounted to $150, including $25 for a brace. Dr. Price testified: "I guess it was a pretty reasonable bill," and Dr. Cunningham testified that it was very reasonable. It is urged that inasmuch as Mrs. Clippenger was being treated in Ohio, and that the expenditures were made there, while the physicians who testified as to the reasonableness of the bill lived in Beaumont, their testimony was in the nature of things only a guess, and did not meet the requirement that the charges must be proved to have been reasonable. This argument addresses itself to the weight of the evidence, and not to the action of the court in giving the charge. The evidence justified the court in giving the instruction objected to. The assignment is overruled.

By the tenth, eleventh and twelfth assignments appellant complains of the charge of the court in submitting, as ground of negligence, the rate of speed of the train at the time of the derailment, in permitting the switch at said point to be and remain in bad condition and defective in its construction, and in allowing the switch to remain open at the time of the passing of the train; the objection is that there was no such proof of negligence in the particulars stated as to justify the charge. The portion of the charge complained of is copied in appellant's brief, and is as follows:

"This is a suit by the plaintiff, W. W. Clippenger, against the Texas & New Orleans Railroad Company, for damages alleged to have been sustained by plaintiff by reason of the infliction of injuries to plaintiff's wife, Helen Clippenger, while plaintiff and his said wife were traveling on one of defendant company's passenger trains between the city of Houston, Texas, and the city of Beaumont, Texas, on or about the 18th day of November, 1902, plaintiff alleging that he and his said wife had purchased tickets reading over the line of railroad of defendant company, between said points, by which they were entitled to a first-class passage to the city of Beaumont, and that, in consideration of the purchase of said tickets, the defendant company undertook to safely transport them to their said destination. Plaintiff further alleges that while on said train, at a point at or near the town of Devers, the said train was wrecked; that at the time of said wreck the said train was negligently operated, in that it was run at a high and dangerous rate of speed; that defendant company, its servants, agents and employes,

were negligent in running said train across a switch at said point at a high and dangerous rate of speed, and were negligent in then and there permitting and allowing their road and track to become and remain in bad repair, and in then and there permitting the switch at said point to be and remain in bad condition and defective in its construction, and that in addition to all of said defects and causes contributing to the wrecking of said train, that the defendant, its servants, agents and employes, negligently and carelessly allowed said switch to remain open at the time of the passing of said train, so as to allow the said train to enter said switch and sidetrack with unusual force and speed, resulting in the wrecking of said train; plaintiff further alleges that his said wife sustained serious and permanent injuries in said wreck, which injuries are fully set out in plaintiff's second amended original petition herein; that his said wife suffered great physical and mental pain, and was compelled to engage the services of physicians, surgeons and nurses, and purchase medicines and medical supplies, in order to properly care for said injuries, to plaintiff's further damage, as alleged in his said petition, and that all of said damages are the proximate result of the negligence of the defendant company, its servants, agents and employes in the manner and things alleged in said petition.

"In answer to these allegations the defendant company has pleaded a general denial, and the effect of this plea is to cast upon the plaintiff the burden of proof to establish the material allegations in his petition, and, amongst other things, that his said wife was injured, as alleged, and that such injuries, if any, were the proximate result of the negligence of the defendant company, its servants, agents and employes, in one or more of the things charged against it.

"Now, gentlemen of the jury, bearing in mind the foregoing instructions and definitions, if you find, from a preponderance of the evidence before you, that the plaintiff and his said wife were passengers for hire, as alleged by them, and at the time and place alleged, and that plaintiff's wife was then and there injured, as alleged, that the defendant company, acting by and through its servants, agents and employes, were then and there in charge and control of said train, and that said train was then and there run into and across an open switch upon a siding, at an unusual rate of speed, and you further find, from a preponderance of the evidence before you, that in so doing the said defendant, its servants, agents and employes, were guilty of negligence, as that term has been herein defined to you, and that such negligence was the proximate cause of plaintiff's wife's injuries, then, if you so find, you will find for the plaintiff, etc. Or, if you should find, from a preponderance of the evidence, that at the time and place alleged the defendant company, its servants, agents and employes, failed to exercise due care and foresight, as has been herein explained, in regard to the condition of the switch, and that such act, if any, constituted negligence, as the term has been defined, and that such negligence, if any, was the proximate cause of said injuries, then you will find for the plaintiff."

The evidence shows that when the train reached Devers it was going at an unusually high and dangerous rate of speed; that when the switch was reached, for some cause unexplained, the engine left the

main track and started on the switch track, and then almost immediately left the rails and plunged into the mud. The tender followed the engine, and in turn was followed by the mail car and baggage car in the order named, and each of these left the track about the time the switch was reached. The first passenger coach also started into the switch and then in some way went back toward the main line. The coach in which appellee and his wife were riding followed the other, but did not go quite the same distance after it left the rails. The witness Whitlock testified that about the time the engine struck the switch he saw it turn to the left and go into the mud, and the mail or baggage car following it changed ends, and the trucks were knocked off. As to the speed of the train, the witness Babcock testified that when he first observed the train it was two or three miles away and going toward him at a high rate of speed; that the speed was so great that he feared something would happen. "I think it went the fastest of any train I ever saw; it was coming towards me, and the train was humming, and it hummed like a threshing machine, and the boiler on the trucks was going from side to side;" that when it passed over a little bridge about 200 feet away it seemed to gain momentum, and when it struck the switch "it was going at a fearful rate of speed—at a terrible rate of speed." The testimony further shows that the ground was very soft; that there was a great deal of water alongside the track there, that water stood generally over the country, and the drain ditches were full of water, and everything was overflowing, but that the roadbed at the switch was above the water that day. The appellee testified that the train was two hours behind time, and that just before the accident the train was going very fast, and the impression made on him was that it was going at a terrific rate; that as he looked out of the window everything was flying by very rapidly; that there was a rocking motion to the coach; that he did not remember ever riding on a train that traveled so rapidly; that in the last four or five years he had traveled fifty or sixty thousand miles, and had frequently timed trains between stations; that his attention was attracted to the speed of this train "on account of the terrific speed we were going."

While the law does not prescribe the rate of speed at which a train should be run through a switch, still it is pertinent to the general issue of negligence to inquire whether or not appellant's train was being run at a greater rate of speed than was prudent considering all the circumstances; and in view of the evidence above given we do not think it was error for the court to submit the issue of appellant's negligence, in that regard, to the jury. Galveston, H. & S. A. Ry. Co. v. Eaten, 44 S. W. Rep., 562; McDonald v. International & G. N. Ry. Co., 86 Texas, 9.

Nor do we think there was any error in submitting the question of the negligence of the servants of appellant operating the train in running the same into an open switch or siding at an unusual rate of speed, or the negligence of appellant in failing to use due care in regard to the condition of the switch. That the train was run into the switch at an unusual rate of speed was shown by the undisputed evidence. That the switch was open is logically inferable from the fact that the engine left the track there and went onto the siding. That the

appellant did not exercise ordinary care in regard to the condition of the switch may be inferred from the fact that such condition was not corrected before the train, laden with human lives, reached the switch and was wrecked. It seems to us that the facts of this case bearing upon the condition of the switch call for the application of the rule *res ipsa loquitur.*

But it is urged that the charge was erroneous because it submitted to the jury the negligence of the appellant in allowing its road and track at the point of accident to become in bad repair and in permitting the switch at said point to be and remain in bad condition and defective in construction. These objections are not sustained because, from an inspection of the charge, we find that no such issues were submitted. It is true that the trial court, in stating the plaintiff's case in his charge, enumerated all the grounds of negligence alleged by appellee, among which were those next above referred to; but in submitting the issue the court confined the jury to the question of negligence of appellant in running its train into an open switch at a siding at an unusual rate of speed, and in failing to exercise due care in regard to the condition of the switch.

We have considered the other assignments of error presented by appellant, and conclude that none of them point out any reversible error. The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.