## FREEPORT TOWN–SITE CO. v. S. H. HUDGINS & SONS. (No. 7618.)*

(Court of Civil Appeals of Texas. Galveston. March 29, 1919. Rehearing Denied April 17, 1919.)

1. LIMITATION OF ACTIONS ⬱127(8)—STATUTE OF LIMITATIONS—AMENDED PETITION.

Where petition for loss of barges, filed within two years of the loss, alleged that defendant was in their possession "without hire," an allegation contradicted by the specific facts recited, another amended petition filed more than two years after the loss, and eliminating the improper allegation that the barges were in defendant's possession without hire, did not change the cause of action, and was not barred by the two-year statute of limitations.

2. EVIDENCE ⬱472(4) — OPINION — MIXED QUESTION OF LAW AND FACT—REASONABLE CARE.

In an action for loss of barges, testimony of a witness, who had been in charge of another party's barge at the time of the flood which caused the loss, that he considered it reasonable care and ordinary prudence on his part to have five men on his barge to protect it from the flood, held inadmissible as opinion involving a mixed question of law and fact.

3. APPEAL AND ERROR ⬱1052(8)—HARMLESS ERROR—EVIDENCE.

In an action for loss of barges, improper admission of opinion testimony as to what was reasonable care in his own management of the barge of another party held harmless, where without such testimony the result of the trial would have been the same.

4. APPEAL AND ERROR ⬱1050(2)—HARMLESS ERROR—ADMISSION OF ABANDONED PLEADINGS.

In an action for loss of barges tried on the third amended petition, admission in evidence of defendant's abandoned original and first amended answers, if incompetent and irrelevant as to any issue, held harmless.

5. SHIPPING ⬱58(2)—LOSS OF BARGES—ISSUES, PROOF, AND VARIANCE.

A petition in action for loss of barges at wharf which, after charging several negligent omissions in protecting barge, contained clause "or otherwise protect said barges," is broad enough to let in proof of any negligent omission causing loss of barges.

6. EVIDENCE ⬱410—PAROL EVIDENCE AFFECTING WRITING — ABSENCE OF WRITTEN CONTRACT.

In an action for loss of barges while in defendant's possession, testimony of a plaintiff as to the agreement between the parties held not inadmissible as varying the terms of any written contract; a letter not having been considered by the parties as constituting the contract.

7. SHIPPING ⬱54—INJURY TO BARGES—LIABILITY.

Where defendant took entire possession and control of plaintiff's barges under contract to use ordinary care to protect the barges, it was defendant's duty to compel the owners of a boat moored to them to cut loose in time of flood and danger if the tying up of the boat endangered the barges.

Appeal from District Court, Brazoria County; Samuel J. Styles, Judge.

Suit by S. H. Hudgins & Sons against the Freeport Town-Site Company. From judgment for plaintiffs, defendant appeals. Affirmed.

W. T. Andrews, of Stamford, Wilson & Follett, of Angleton, and Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

A. R. Rucks, of Angleton, for appellees.

LANE, J. This suit was brought by appellees, Hudgins & Sons, against appellant, Freeport Town-Site Company, to recover the value of two barges, alleged to have been of the value of $3,000 each. Judgment was rendered for the appellees for the sum of $2,000.

That the nature of the case, the proceedings of the trial, and the contentions of the parties may be clearly presented at the outset, we deem it advisable to make the following statement:

Following certain oral conversations and agreements between the parties forming the contract between them with relation to the matters in controversy, one W. A. Randle wrote the following letter to appellees:

"Houston, Tex. Oct. 7, 1912.

"Mr. Hudgins—Dear Sir: I am writing Mr. Burns to draw up and send contract to be signed for the delivery of 4,000 cu. yards, approximately, of shell for the shelling of the streets of Freeport. The shell to be a good grade, and suitable for the purpose to be used. You to load the shell, assume the government charge for shell, sand or gravel (should there be any), and deliver at the bank ready to unload, the location to be at some point near the east line of the townsite property. Mr. Burns to unload the shell as soon as convenient and practical to do so. The consideration being one dollar ($1.00) per cu. yard delivered on barge at the bank. Payments to be made on shell delivered at the bank during each month.

"Yours very truly,        W. A. Randle."

The contract referred to in this letter was never drawn up, and there was no written contract made by the parties unless this letter, copied above, can be so construed.

On or about the 27th day of October, 1913, appellees delivered the two barges hereinbefore mentioned, loaded with shell, to appellant at the place agreed upon by them by the aforesaid contract. These barges were tied by appellees to certain piling driven in the bed of the Brazos river by appellant alongside its wharf for the purpose of protecting the wharf and for tying boats and

barges to be unloaded thereat. While these barges were so tied, a large flood of water came down the river, and on the 28th day of November, 1913, broke them loose, and they were carried out into the gulf and destroyed.

On the 9th day of June, 1914, appellees filed their original petition. On the 8th day of March, 1916, they filed their first amended petition in lieu of the original petition. The original is not set out in the statement of facts or elsewhere in the record. We shall assume that the cause of action in the two petitions was the same, as no contention is made to the contrary. On the 19th day of February, 1917, they filed their second amended petition in lieu of their first amended petition. In this petition they alleged the contract substantially as in the preceding abandoned petitions. The specific allegation that the barges were in possession of appellants "without hire," found in the second amended petition, however, did not appear in the abandoned petitions. They also alleged therein that by the agreement between the parties, which constituted the contract between them, the appellant agreed to erect a safe place and anchorage for the barges and would accept and receive the shell on said barges at said places; that it would take possession and control of the barges, and would unload the shell as soon as convenient and practicable and within a reasonable time after delivery; that it agreed that during the time it was engaged in unloading the barges they were to be in its possession, control, and care; that said contract was based upon oral agreements and the letter above set out; that on the 27th day of October, 1913, in pursuance of said contract they delivered to appellant two barges loaded with shell at the place designated and prepared by it for unloading; that appellant accepted said shell and took exclusive possession and control of the barges; that they securely tied and anchored the barges to the piling and wharf so prepared by appellant. They further alleged that appellant negligently failed to unload said shell and redeliver the barges as soon as convenient and practicable and within a reasonable time, but kept them tied to said wharf an unreasonable and unwarranted length of time. They alleged that the place prepared and designated for the anchorage of the barges was negligently constructed and was not a safe place of anchorage; that the piling set for tying the barges to were not down deep enough into the ground to hold the barges, and that by reason thereof the flood waters of the river caused the piling to give way and the consequent loss of the barges. They alleged that appellant knew of the approaching flood in the river, but did nothing whatever to protect the barges. They also alleged that appellant had exclusive possession and control of said barges without hire. They further alleged as follows:

"That plaintiffs frequently requested of the defendant the possession of said two barges, but plaintiffs allege that at the time such requests were made the defendant stated to plaintiffs that they had not yet unloaded said barges and promised and assured plaintiffs that the defendant would take proper care of and protect said two barges from all injury and loss; that plaintiffs advised the defendant that a rise in the said river was approaching and of the resulting danger therefrom to said barges, and specially requested of the defendant the possession of said two barges, a few days before the arrival of said flood waters, that they might take said barges to a place of safety and care for and protect them from such approaching flood, but that the defendant again stated they had not yet unloaded said barges and not yet ready to deliver the possession thereof to the plaintiffs, but at such time again promised and assured plaintiffs that the defendant would care for and protect said barges from all injury and loss. Plaintiffs allege that, notwithstanding that plaintiffs had delivered the possession and use of said barges to the defendant, and notwithstanding defendant's promises and assurances that they would care for and protect said barges, they wholly failed and neglected to provide a safe place, harbor, or wharf in which to securely hold and care for said barges, and failed and neglected to provide a proper and secure place to which said barges could be tied and anchored, and wholly failed and neglected to securely tie and anchor said barges and to care for and protect the same, and as a result of such negligence said barges were torn from their anchorage and were washed away and lost and destroyed, to plaintiffs' great damage in the sum of $6,000 as aforesaid."

On the 31st day of August, 1917, appellees filed their third amended petition in lieu of the next preceding petition, and therein alleged substantially the same facts as in the abandoned petitions. But in this last petition, upon which they went to trial, they alleged that appellant had agreed to pay appellees for the shell, and for the use of the barges while awaiting the unloading, the sum of $1 per cubic yard of shell; while in the abandoned petitions, after setting up the specific agreement as to the uses to be made of the barges by appellant, they alleged that the barges were in the exclusive possession and control of appellants without hire. The negligence alleged in the third amended petition, upon which appellees relied for a recovery, is: First, that appellant held possession of the barges and failed, neglected, and refused to unload and redeliver same to appellees for an unreasonable and unwarrantable length of time, thus holding them in a place of danger; second, that appellant kept the barges tied to its wharf and anchorage piling, which did not, within the knowledge of appellant, constitute a safe anchorage, in that said piling were carelessly and negligently driven, and not driven to a sufficient depth in the ground to make them secure for the purpose of anchorage for the barges; third, that appel-

lant took no steps whatever, after being advised of danger threatening the barges from the flood waters of the river, to repair said anchorage for the barges and to remove them to a place of safety, or otherwise care for or protect the same.

Appellant answered by general demurrer, by general denial, and specially pleaded contributory negligence on the part of appellees in that they tied the barges to the piling along the side of appellant's wharf with full knowledge of the dangers alleged by them, and, having such knowledge, failed to use any care of diligence wahtever to protect their barges or to remove them to a place of safety. It also pleaded the two-year statute of limitation in bar of appellees' action upon the theory that the third amended petition, filed August 31, 1917, set up a new and different cause of action from that set up in the abandoned petitions.

The case was submitted to a jury. After stating the nature of the suit as made by the plaintiffs' petition and the defense made by the answer of defendant, and after defining "ordinary care" as used in the charge, the court further instructed the jury as follows:

"Now, if you believe from a preponderance of the evidence that, according to the contract, if any, entered into by and between the plaintiffs and the defendant in this case, it was understood and agreed by and between the plaintiffs and the defendant that the plaintiffs were to deliver the shell at the point as shown by the evidence, on the barges, and that after the delivery of the shell on the barges at the place designated the defendant was to take charge, care, and control of the shell and the barges, and you further believe from a preponderance of the evidence that on or about the 27th day of October, 1913, the plaintiffs, in accordance with their contract, delivered certain shell upon two barges at the point designated by the defendant, and that the defendant then and there under said contract took charge, care, and control of said shell and two barges, and that thereafter, while the said barges and shell were in care and control of the defendant, if they were in the care and control of the defendant, if they were in the defendant's care and control, the said barges broke from their moorings and were washed out to sea and destroyed, and that such breaking from the moorings of said barges, if any, was caused by the defendant not exercising that degree of care in the care, management, and control of said barges as a man of ordinary prudence under the same or similar circumstances would exercise if the property had been his own, and that by reason of such negligence, if any, the said barges were caused to break from their moorings and wash out to sea, and be destroyed, then you will find for the plaintiffs in such sum as you may find from the evidence to be the reasonable market value of said barges at Freeport, Tex., at the time the same were destroyed.

"On the other hand, if you find from the evidence that the defendant did not contract with the plaintiffs to take charge, care, and control of the said barges, or if you believe that they did take charge, care, and control of said barges, and you believe from the evidence that the defendant exercised that degree of care in the care and control of said barges as a person of ordinary prudence would exercise under the same or similar circumstances if the property was his own, or if you believe from the evidence that the barges broke from their moorings and washed out to sea and were destroyed from any other cause than that of the negligence of the defendant as charged in the plaintiffs' petition, then you will find for the defendant.

"The burden of proof is upon the plaintiffs to establish their case by a preponderance of the evidence."

The court also gave to the jury a special charge requested by the defendant as follows:

"If you believe from the evidence that the defendant used ordinary care and prudence in the construction of the unloading place for said barges, that is, such care as a person of ordinary care and prudence would have used under the same or similar circumstances, then you are instructed that the defendant would not be liable on account of any defect in said unloading facilities, although such defects may have resulted in the loss of said barges."

Upon such charges the jury returned a verdict in favor of appellees for the sum of $2,000. Judgment was accordingly entered. From this judgment the Town-Site Company has appealed.

[1] We shall first dispose of the contention of appellant that the court erred in not instructing a verdict for it upon request, because under the pleading and the evidence the cause of action sued upon was shown to have been barred by the two-year statute of limitation pleaded by it.

This contention is based upon the theory that appellees had alleged in their second amended petition, filed in lieu of their petition theretofore filed, that appellant was in possession of the barges at the time of their loss, without hire, while in their third amended petition, upon which they went to trial, filed in lieu of their abandoned petitions, they alleged that appellant had agreed and contracted to pay appellees for the shell and for the use of the barges, thus in their said third amended petition declaring upon a new and different cause of action from that declared upon in their abandoned petitions, and, that, as the last petition was filed more than two years after the cause of action accrued, to wit, November 28, 1913, same was barred by the statute of limitation pleaded by appellant.

As hereinbefore stated, appellees in their original and first amended petitions, filed within two years after the accrual of their cause of action, set out in minute details the terms, conditions, and considerations of the contract between the parties under which

212 S.W.—19

the barges were delivered to appellant, the promises and agreements of appellant to take exclusive possession, control, and care of the barges, and its agreement to protect the same while in its possession, the failure of appellant to exercise any care whatever to protect and take care of the barges while in its possession so as to protect them from danger or destruction, and the loss of the barges by reason of the negligent failure of appellant to exercise any care to prevent such loss, and that in their second amended petition the appellees set out substantially the same matter as in the two preceding petitions, but in this, their second amended petition, they alleged, in addition to such matter, that the barges were in possession of appellants "without hire."

We think the allegations in all the abandoned petitions sufficiently allege and show that the sum agreed to be paid to appellees by appellant under the contract was not only for the shell, but was in payment for both the shell and the use of the barges for holding the shell until appellant should unload the same. While the allegation that the barges were in possession of appellant "without hire" was contradictory of the detailed statement of the contract theretofore made, we nevertheless conclude that the contract as alleged shows that a part of the consideration paid was for the use of the barges, and the use of the words "without hire" in the petition did not destroy the effect of such detailed statement of the terms of the contract and agreement.

We also conclude that appellees, by the omission in the third amended petition of the contrary statement in the second amended petition that bailment was without hire and in more explicitly alleging the terms of the agreement in the last petition, did not set up a new and different cause of action from that declared upon in the abandoned petitions. Hitson v. Hurt, 45 Tex. Civ. App. 360, 101 S. W. 292; Johnson v. Railway Co., 42 Tex. Civ. App. 604, 93 S. W. 433; T. & N. O. Ry. Co. v. Clippenger, 47 Tex. Civ. App. 510, 106 S. W. 155; Schauer v. Von Schauer, 138 S. W. 146; Cotter, Truelove & Co. v. Parks, 80 Tex. 542, 16 S. W. 307; G., H. & S. A. Ry. Co. v. Perry, 38 Tex. Civ. App. 81, 85 S. W. 66.

The only material change made in the last petition is that in it the pleaders' misconception of the facts were corrected and the allegation that the barges were in possession of appellant "without hire" was eliminated. The court did not err in refusing the requested instruction.

[2] W. T. Deason, having been called by the defendant, upon direct examination testified that he was in the employ of the H. & B. V. Ry. Co. in November, 1913, and at the time the barges of appellees were lost; that at the time said barges broke loose from their moorings he was on a barge owned by the railway company situated about 300 or 400 feet down the river from them; that he had five men on the railway barge to protect it from the flood; and that they saved it. On cross-examination by counsel for plaintiffs he was asked the following question: "You considered that reasonable care and ordinary prudence?" To which the witness answered: "Yes, sir." This question and answer were objected to by appellant. Appellant assigns the act of the court in permitting the question and answer as error.

The contention of appellant is: First, that such testimony was irrelevant and improper; second, that it was a conclusion of the witness upon a mixed question of law and of fact; third, that such conclusion of the witness was not proper and legitimate evidence of what ordinary care required appellant to do to protect the barges.

The testimony objected to related to situation of the railway barge and the means used by the witness and his men to protect it from the flood. No reference was made by the witness as to what was necessary to be done to protect the barges of appellees. Evidently, however, it was the purpose of counsel for appellees, in asking the question objected to, to have the witness testify that he used five men in protecting the railway barge, and that such act was the exercise of reasonable care and ordinary prudence, to lead the jury to infer that it was the opinion of the witness that the failure of appellant to place men in appellees' barges was an act of negligence. There can be no doubt but that the question objected to and the answer given thereto were improperly admitted. A witness should not be permitted to draw conclusions and testify as to his opinion in a matter involving a mixed question of law and fact, such as what acts would have been necessary to constitute ordinary care and prudence to protect appellees' barges from the flood waters of the river in which they were moored. The determination of what would or would not constitute ordinary care on the part of appellant was one for the jury to determine from all the facts proven. H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808; Bryan Press Co. v. Railway Co., 110 S. W. at bottom of page 101, column 2, and authorities therein cited; Kirby Lumber Co. v. Dickerson, 42 Tex. Civ. App. 504, 94 S. W. at page 153.

[3] We do not think, however, that the judgment of the trial court should be reversed because of the improper admission of such question and answer, as we are of the opinion that it may be fairly and safely said that without the testimony of the witness Deason the result of the trial would have been the same, and hence appellant has suffered no material injury by the admission of the testimony.

We think the evidence shows that it was the duty of appellant to take such steps and use such means to protect the barges in question as a person of ordinary care and prudence would have used under like or similar circumstances to protect barges of his own. The evidence also shows that appellant was advised of the approaching flood and the danger of the loss of appellees' barges; it shows that appellant could have probably prevented the loss of the barges by the exercise of ordinary care, and yet, notwithstanding these facts, it did nothing whatever to prevent such loss.

[4] By its second assignment appellant complains of the action of the court in permitting appellees to introduce in evidence the original and first amended answers of appellant for the purpose of showing that the defenses set up in both of said answers were substantially the same as the defenses set up in appellant's second amended answer, and to show that each of said answers were made to substantially the same cause of action as that declared upon by appellees' third amended petition, upon which the trial was had, and to further show that said first two answers did not plead the statute of limitation as a defense. The reasons assigned for such complaint are that said abandoned answers were "incompetent and irrelevant for any purpose, and because neither of the purposes for which they were offered in evidence are in any wise relevant or have any material bearing upon the facts or law in the case."

The admission in evidence of these answers, even if incompetent and irrelevant to any issue in the case, and for these reasons erroneously admitted, would constitute, at most, harmless error only, and not be cause for a reversal of the judgment of the trial court.

[5] The third assignment complains of the general charge of the court in that it did not limit the plaintiffs' right of recovery to the specific acts of negligence set forth in plaintiffs' petition.

We overrule this assignment. We have hereinbefore stated the acts of negligence pleaded by the plaintiffs, and have also set out the general charge of the court, and are of the opinion that the pleadings of the plaintiff and evidence adduced authorized the charge as given. After charging several negligent omissions of defendant in protecting the barges, the petition contains the clause "or otherwise protect said barges." We think this allegation was sufficient to let in proof of any negligent omission of defendant which caused the loss of the barges.

S. H. Hudgins in effect testified that W. A. Randle, agent of defendant, came to witness and said that defendant wanted to make a trade for some shell, and wanted witness to give his prices, and that witness told said Randle he would deliver defendant shell f. o. b. on witness' barges at the wharf of the defendant at $1 per yard, and that, if defendant would unload them, witness would let defendant have the use of said barges until defendant could get them unloaded in a reasonable time; that defendant agreed to pay $1 per cubic yard for said shell and the use of said barges. Appellant makes the admission of this evidence the grounds of its fourth and fifth assignments.

[6] Appellant's contention under these assignments is that the letter from Randle to Hudgins set out herein constituted a written contract between the parties covering the matters involved in this suit, and that the testimony objected to was an attempt to vary the terms of said written contract by proof of oral agreements between the contracting parties, and therefore such testimony was inadmissible.

We think this contention untenable. Mr. Hudgins testified:

"Mr. Randle came to me and said they wanted to make a trade for some shell, wanted me to give them my prices, and I told them that I would deliver them shell f. o. b. my barges at their wharf at $1 a yard, and that, if they would unload them, I would let them have the use of the barges until they could get them unloaded in a reasonable time. In so far as this letter goes, it stated the contract correctly, I think. The letter did not constitute the entire agreement between us; we had a verbal agreement, but no written contract was ever fixed up; they promised to fix up a contract, but never did so. The agreement I had with Mr. Randle was as follows: Mr. Randle came to me and said they wanted to make a trade for some shell, wanted me to give them my price, and I told them I would deliver them shell f. o. b. my barges at their wharf at $1 a yard, and that, if they would unload them, I would let them have the use of the barges until they could get them unloaded in a reasonable time.

"The agreement as finally made was to the effect that they should unload the shell from the barges as soon as convenient and practicable. In a way, Mr. Randle did accept my proposition through this letter. I received this letter from Mr. Randle, and he said that they would get up a contract and cover all the details later on, but there was never a written contract drawn up."

Mr. Randle, agent of appellant, who wrote the letter referred to herein, testified, among other things, that the letter was the only written contract ever drawn; that he had prior to writing the letter discussed the matter of making a contract for shell with Mr. Hudgins; that he told Hudgins where the appellant would prepare a wharf at which to deliver the barges and unload the shell; that, while he agreed to prepare such wharf for such purposes, he did not mention that part of the agreement in the letter.

We think it clearly appears from the evidence that neither of the contracting parties considered the letter as constituting a writ-

ten contract between them. The main objection to the testimony of Hudgins now being discussed was that he testified that appellant had agreed to unload the shell in a "reasonable time," while in the letter it was stated that the shell should be unloaded "as soon as convenient and practicable." It will be noted, however, from the testimony of the witness Hudgins above quoted, his final conclusion was that the agreement was that the shell was to be unloaded by appellant as soon as "convenient and practicable." We do not think the court erred in admitting the testimony. However, we think the question here discussed but of little importance, as it is apparent that appellees' case as submitted to the jury is not one for damages for breach of an express contract, but, reduced to its last analysis, it is a suit for damages for the failure of appellant to use ordinary care to protect property of appellees, held by it under a contract of bailment. It is alleged by the plaintiffs that they delivered the barges to the defendant; that defendant took complete possession and control, and held such possession and control of them until they were lost; and that such loss was incurred by reason of the negligence of the defendant in not exercising any care whatever to protect them from the flood water of the river. We overrule the assignment.

What we have said under the assignment first discussed herein sufficiently disposes of assignments 6, 7, and 8. A further discussion of the complaints presented by said assignments is therefore unnecessary. We overrule the assignments.

[7] By the ninth assignment complaint is made of the refusal of the court to give the following charge requested by the defendant:

"It is shown by the evidence that at the time the two barges in question went away from the unloading place where they had been tied that there was a certain boat, named the Ora, alongside said barges. You are instructed that, if you believe from the evidence that said barges would not have been broken loose but for the fact, if you believe it to be a fact, that said boat Ora was at said time fastened to said barges, then you are instructed that the plaintiff would not be entitled to recover, and, if you so believe from the evidence, you will find for the defendant."

We do not think the court erred in refusing this charge. We think it was shown that appellant took entire possession and control of the barges under the contract between the parties, and was under the obligation to use such care as a man of ordinary care and prudence would have used to protect the barges from injury or loss, and that it was its duty to have compelled the owners of the boat Ora to cut loose from the barges,

if the tying of said boat to them would endanger the barges.

We overrule the tenth and last assignment. There is no evidence which would justify the court in submitting the question of contributory negligence on the part of appellees.

The judgment of the trial court is affirmed.

Affirmed.