### WAITS v. HOGAN.

No 6436.

Court of Civil Appeals of Texas. Texarkana.

April 14, 1949.

Rehearing Denied May 12, 1949.

J. K. Brim, Sulphur Springs, Mat Davis, Gilmer, for appellant.

Florence & Florence, Gilmer, D. S. Meredith, Jr., Longview, for appellee.

HALL, Chief Justice.

This is a suit brought by appellee against appellant for damages allegedly sustained by her while a passenger on one of appellant's passenger buses. Appellee alleged that as she started to alight therefrom, and while stepping down from the bus to the ground, the driver either started the bus or permitted it to roll forward before the plaintiff could step to the ground; and that the action of the driver in either starting the bus or in permitting it to roll forward, caused the plaintiff to fall to the ground, severely injuring her. Appellee alleged further that said act by appellant's agent, the bus driver, constituted negligence and was a proximate cause of her injury. Appellant joined the issue. Trial before a

jury resulted in a verdict for appellee and a substantial judgment for an alleged sprained ankle was rendered for her.

Appellant's point 1 is:

"The trial court erred in overruling defendant's special exception No. 1 to plaintiff's last amended petition because said last amended petition alleged a new and independent cause of action that was barred by the two year statute of limitation for the following reasons:

"(a) A recovery on the original petition would not bar a recovery on the last amended petition;

"(b) The same evidence would not support both of the pleadings;

"(c) The measure of damages would not reasonably be the same; and,

"(d) The allegations in the last amended petition and the allegations in the original petition were not subject to the same defenses."

In her original petition appellee alleged that she purchased a ticket from appellant's agent at Gilmer from that city to Covin's Store, located on the highway toward the city of Marshall, and that after boarding the bus, and prior to reaching Covin's Store, she requested the driver to permit her to get off the bus at Swanner's residence, which the evidence on the trial showed was beyond the store toward Marshall. The trial court permitted appellee to amend her pleading by changing the point of destination alleged therein from Covin's Store to New Dianne, a point further down the highway toward Marshall, and beyond Swanner's residence. It was appellant's contention upon the trial below that appellee purchased a ticket from Gilmer to Covin's Store, and the testimony of his bus driver bears out this contention. It is the further contention of appellant that appellee after having reached her destination, namely, Covin's Store, that from there to Swanner's home, where she left the bus, and where she was injured, she was a guest or trespasser and appellant would not owe her the same high degree of care as before she reached Covin's Store, the destination of her ticket. Appellee claimed and so testified on the trial below that she purchased a ticket from Gilmer to New Dianne, a point beyond Swanner's residence, and the jury in answer to a special issue sustained her in this respect. It is appellant's theory of this case that under the allegations as contained in appellee's original petition, she became a licensee or trespasser the moment she passed Covin's Store, and continued as such until she got off the bus at Swanner's residence a quarter of a mile from Covin's Store, and the amendment permitted by the trial court changing the destination of the ticket from "Covin's Store" to "New Dianne," changed the cause of action alleged by appellee in her original petition, and, having been filed more than two years after the alleged accident, was barred by the two years' statute of limitation. An examination of the two pleadings involved reveals that the cause of action alleged by appellee was identical in each pleading. The only change made is a substitution of "New Dianne" for "Covin's Store" as her destination. We have concluded that the amendment did not constitute a new cause of action for the reason that the cause of action alleged is identical. Vernon's Ann.Civ.St. art. 5539b is authority for the above holding. This article is:

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a *new, distinct or different transaction and occurrence*. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require." (Italics ours).

In Lee v. Boutwell, 44 Tex. 151, it is said:

"If we look to the form of the breach alleged in the original and amended petition, and make that the test of the cause of action, it would be different in the one from the other; but if we look to the facts alleged as a basis of recovery, to-wit, the services of plaintiff and his expenditures in attend-

ing to the business for which he was employed by the defendant, they are substantially the same in the original and amended petition." Scanlon v. Galveston H. & S. A. Ry. Co., Tex.Civ.App., 86 S.W. 930; Texas Pacific Coal & Oil Co. v. Smith, Tex.Civ.App., 130 S.W.2d 425; Malmstrom v. Gulf C. & S. F. Ry. Co., Tex.Civ.App., 188 S.W. 453; Hilliard v. Smith Brothers, Inc., Tex.Civ.App., 159 S.W.2d 166; Texas & N. O. Ry. Co. v. Clippenger, 47 Tex.Civ.App. 510, 106 S.W. 155, w/r, and authorities there cited.

■ Another reason we think the cause of action stated in the amended petition is not barred by the statute of limitation is that it is undisputed that appellee rightfully boarded appellant's bus as a passenger and under the testimony offered by appellant she was permitted by his bus driver to continue as such until she reached Swanner's residence, a quarter of a mile beyond her destination. Granting for the sake of this point that appellant's contention with respect to the destination of her ticket is correct, appellee having entered appellant's bus as a paying passenger and at her request and with permission of appellant's agent, the bus driver, she was carried beyond her destination, Covin's Store, to Swanner's residence, a quarter of a mile down the road, she would continue to be a passenger until she was permitted to get off of the bus at Swanner's residence. And it may be stated here that the record does not show that the bus stopped at Covin's Store, the intimation being that it did not. While she was riding the bus from Covin's Store to Swanner's residence, with permission of appellant's agent, the bus driver, she would be entitled to the same degree of care, skill and diligence for her safety and protection as though she were a paying passenger for such distance. 13 C.J.S., Carriers, § 680, page 1263.

"Where, however, the conductor of a train or other agent of the carrier, in violation of the rules of the carrier, invites a person to ride without payment of fare, the person riding in good faith on such invitation is a passenger and not a trespasser." 13 C.J.S., Carriers, latter part of § 549, page 1053.

So, we think under either contingency set out above appellee's amendment did not change her cause of action to such extent that the bar of the two year statute of limitation would apply. A careful reading of the decisions cited by appellant will demonstrate that they are not in point and do not control the fact situation here.

■ Appellant's point six relates to misconduct of the jury in mentioning or discussing the subject of insurance while deliberating on the case. This point also asserts that the jury's action in awarding the appellee the sum of $300.00 for doctor and hospital bills in violation of the court's instructions not to do so "showed both passion and prejudice." A hearing on the motion for new trial as it related to jury misconduct was had in the court below and six of the jurors were called to testify. Aubrey Johnson, foreman of the jury, stated that before the jury had reached a verdict and probably while it stood six to six on the first issue, that is, with respect to appellant's alleged negligence, testified:

"A. Well, now, to just tell the truth, I wouldn't tell you everything that was said about it. There was something mentioned about it. Somebody said they wouldn't mind to give that—maybe give the lady so much if the insurance company would pay it, and I just spoke up, as well as I remember, and said, 'Well, that won't have anything to do with this case at all,' I says, 'We wouldn't have a thing to do with that, whether they had insurance or whether they didn't.'" * * *

"Q. Did you hear any of the jurors say anything about coming into the court and asking who would pay this, Mr. Waits or the Insurance company?

"A. I believe something was said about that, who would pay it and who wouldn't." Another juror testified that before a verdict was reached that "they said that he (appellant) was a mighty poor business man if he didn't have insurance; I believe something similar to that * * * Somebody said—I don't know who it was or how it came up or anything—that what difference did it make, the insurance company was going to take care of it anyway, and I said, 'I don't believe in riding the insu-

rance companies myself. That is why insurance is so high these days.' There was a few more words said about it, I don't know; finally it was just dropped out." · Juror Fuller testified:

"Q. Or did you take that into consideration in arriving at your verdict?

"A. Well, that was talked over and we were not supposed to consider insurance, because it was not before us in the trial.

"Q. I will ask you this question. Did the fact that a statement like that was made have any effect on you in arriving at your verdict?

"A. Well, it may have had some, but I just—I don't think it would have had much." This juror also testified that he believed the discussion of insurance came after an agreement had been reached on the answer to issue No. 1. Five of the jurors testified that the subject of insurance was mentioned as outlined above during their deliberations. One of them testified that he did not hear it discussed. We think the record indisputably shows that the subject of insurance was before the jury during their deliberations and before the verdict was reached; that it was stated by some member or members of the jury (1) that the appellant was a mighty poor business man if he didn't have insurance; (2) that the insurance company would pay the verdict rendered. There is evidence in the record to the effect that at the time these statements were made the jury stood six to six or five to seven on the first issue, that is, whether the alleged acts of negligence charged against the appellant occurred. Having concluded that the undisputed evidence in the record shows that the discussion with respect to insurance occurred, its probable effect upon the jury becomes a question of law to be determined, in the first instance by the trial court and on appeal by this court and the Supreme Court. Dallas·Ry. & Terminal Co. v. Bishop, Tex.Civ.App., 203 S.W.2d

651. We have concluded that "it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." Barrington, et al. v. Duncan, et al., 140 Tex. 510, 169 S.W.2d 462, 464. "This court takes judicial knowledge of the fact that a jury is more apt to render a judgment against a defendant, and for a larger amount, if it knows that the defendant is protected by insurance." Barrington v. Duncan, supra; Kuntz v. Spence, Tex. Com.App., 67 S.W.2d 254. Furthermore, the attitude of the jury in the trial of this case toward the appellant is shown by the fact that the jury considered doctor and hospital bills and found the sum of $300.00 therefor in favor of appellee in the very face of an instruction by the court not to take these items into consideration in arriving at the amount of damages to be awarded appellee. However, this amount was remitted by appellee upon orders of the court, and this might have cured the error insofar as the amount of $300.00 is concerned, yet it reflects the attitude of the jury toward appellant after the subject of insurance had been mentioned before they had reached a verdict. In Texas & Pacific Ry. v. Gillette, 125 Tex. 363, 83 S.W.2d 307, 309, Judge Hickman, then a member of the Commission of Appeals, said: "If one juror probably agreed to the amount of the damages by reason of this private discussion, the verdict should not be permitted to stand, even though the other jurors knew nothing of it and were not, therefore, influenced thereby."

It is our opinion that this discussion of insurance by the jury probably resulted in injury to the appellant and that a new trial should have been granted by the trial court. Therefore, the judgment of the lower court is reversed and the cause is remanded for a new trial.

Reversed and remanded.