EL PASO TIMES CO. v. FULLER et al. (No. 997.)

(Court of Civil Appeals of Texas. El Paso. June 12, 1919. Rehearing Denied Oct. 9, 1919.)

1. LIMITATION OF ACTIONS ⬄127(13) — AMENDMENT OF PETITION SETTING UP NEW CAUSE OF ACTION BARRED BY LIMITATIONS.

Oral contract as to taking charge of circulation of newspaper, set up in third amended petition, *held* to so materially vary from that in first amended petition as to introduce a new cause of action, barred by limitations.

2. LIMITATION OF ACTIONS ⬄127(11)—TEST WHETHER AMENDMENT OF PETITION STATES NEW CAUSE OF ACTION.

The safest test of whether an amended petition introduces a new cause of action, relative to bar of limitations, is whether the same evidence would support both pleadings, and whether the allegations are subject to the same defenses.

3. PLEADING ⬄253—ON AMENDMENT OF PETITION AMENDED ANSWER UNNECESSARY WHERE ORIGINAL ANSWER SUFFICIENT.

Oral contract as to taking charge of circulation of newspaper declared on in third amended petition *held* not to so materially differ from that declared on in second amended petition as to change the cause of action, so that the bar of the statute, having been pleaded to the second amended petition, did not have to be further pleaded to the third.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Lucius Fuller and another against the El Paso Times Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

T. A. Falvey and Turney, Burges, Culwell, Holliday & Pollard, all of El Paso, for appellant.

Hudspeth, Wallace, Harper & Berkshire, Geo. E. Wallace, and F. G. Morris, all of El Paso, for appellees.

HIGGINS, J. Appellee Fuller brought this suit on July 9, 1913, against appellant, El Paso Times Company. Later appellee C. B. Gordon, claiming an interest in Fuller's cause of action, by agreement with Fuller joined in the suit as a party plaintiff. From a verdict and judgment in favor of Fuller and Gordon, the El Paso Times Company presents this appeal. The causes of action declared upon relate to several demands against appellant. There is no question raised by this appeal except as to an item of $16,285, found in favor of the appellees, and appellant asserts that the cause of action upon which this item of recovery is based is barred by limitation. This question of limitation arises out of the fact that the third amended petition, upon which the cause was tried, was filed more than two years after the cause of action accrued, and it is asserted that this amendment introduced a new cause of action. It is immaterial how Fuller pleaded his case in the original petition, because his first amended petition was filed in less than two years after the cause of action arose.

The second and third amendments were both filed more than two years after the cause of action accrued, and in determining the question of limitation it is necessary to consider only the allegations of the first and third amendments. The pertinent allegations of the first amendment are as follows:

That on May 30, 1910, Fuller entered into a written contract with appellant, evidenced by letter and its acceptance, which reads:

"El Paso, Tex., May 30th, 1910.

"Mr. Thomas O'Keefe, El Paso Times Co., El Paso, Texas.

"Dear Sir: In accordance with our conversation this p. m. in regard to my conducting the circulation of the El Paso Times, I beg to submit the following proposition:

"I will take charge of said circulation (under your direction), giving all my time and my best service, to the end that said circulation be conducted in an up-to-date manner to your entire satisfaction.

"You are to allow me any and all profits that may accrue from the conduct of said circulation over and above three-quarters of one cent per copy, with the exception of such subscriptions as may now be paid in advance; these latter I agree to deliver for you at the cost of such delivery to me, which I guarantee will not be over fifteen and one-half cents per copy per month.

"And I further agree that commencing on the 1st day of August, 1910, I will increase the bona fide paid circulation of the El Paso Times by at least thirty new subscribers per week for the ensuing eighteen weeks.

"All moneys received by said department are to be turned over to you daily, and all circulation expense bills, which I am to bear, including transportation, postage, carrier salaries, bookkeeper salary, etc., etc., are to be paid by you on vouchers furnished by you countersigned by myself, and, when so countersigned, to be charged against my profits over and above the said three-quarters of one cent per copy. All accounts for expenses are to be paid on or before the first day of the month following, and

settlement made with me after deducting all expenses during the ten days next ensuing.

"You are to furnish all necessary storeroom, office space, and office equipment that may be required in the conduct of said circulation department including lights.

"All checks, orders, etc., etc., are to be made payable to the El Paso Times Company, and in no case are they to be made payable to others without your written permission. No one in my employ shall have the right to collect moneys for subscriptions except upon my order countersigned by you.

"This agreement may be abrogated by you without previous notice at any time when you believe I am not giving you proper service.

"All books, accounts, and, etc., are always the property of the El Paso Times Company, and are to remain always in your possession, together with the office equipment, etc.

"It is understood that I am to take charge of said circulation department on the first day of June, 1910, subject to the terms and conditions as above mentioned, until December 1st, next, when we will make a new agreement to cover further time.

"Respectfully,      [Signed] Lucius Fuller.

"Accepted this 30th day of May, 1910.

                    "El Paso Times Co.,
                    "Thos. O'Keefe."

That Fuller entered upon the performance of said contract, and, having performed the same satisfactorily, the parties entered into a verbal agreement continuing the contract. The allegations in the first count, as to the verbal agreement, are as follows:

"5th. That on or about the 1st day of December, 1910, the plaintiff Fuller's service having been entirely satisfactory to defendant, and its said president and manager, Thomas O'Keefe, the plaintiff Fuller and defendant, acting by and through the said Thomas O'Keefe, its then president and general manager, thereunto duly authorized, made, and entered into a verbal agreement continuing said written contract upon the same terms and conditions as set out in said written contract, except that it was then and there understood and agreed that the said O'Keefe should not have a right to terminate said contract so long as the plaintiff Fuller complied with his part of said contract, and built up the circulation to said paper on an average of thirty a week new circulation, and so long as plaintiff Fuller's services were satisfactory to the said O'Keefe; and plaintiff alleges that it was understood and agreed that, should the said defendant or O'Keefe for any cause terminate said contract, the plaintiff Fuller should be entitled to and should thereupon receive adequate compensation for any and all circulation which he might have added, at the time of such termination thereof, to the Times over and above the said thirty per week on an average.

"6th. Plaintiffs allege that, during the time which he was so connected with defendant company, the defendant, acting by and through its said president and manager, Thomas O'Keefe, constantly and continuously urged upon plaintiff Fuller that he build up said circulation at a greater rate than thirty per week on an average, it being at all times understood and agreed by and between plaintiff Fuller and defendant that he should be allowed to continue as circulation manager of the Times, under the terms of said contract, for such length of time, in any event, as would enable him to reap an adequate compensation for his services in connection therewith, and that, should the defendant terminate said contract, the plaintiff Fuller should be entitled to and should thereupon receive adequate compensation for any and all circulation that he might at such time have added to the Times over and above said thirty per week average.

"7th. That at the request and at the solicitation of the said Thomas O'Keefe, president and manager, as aforesaid, the plaintiff Fuller, with diligence and at great expense to himself and out of his own funds, diligently and successfully built up, and continued to build up, the circulation of said paper, until on or about the 1st day of May, 1913, when the actual bona fide paid circulation of said paper, by and through the efforts of plaintiff Fuller, had become and was approximately 9,600; and plaintiff Fuller is informed and believes, and alleges the fact to be, that when he was wrongfully discharged on May 25, 1913, the bona fide paid circulation to defendant's paper was at least 9,600; and that plaintiff Fuller at great expense to himself, and under the solicitation of the defendant and the said Thomas O'Keefe, its president and general manager, as aforesaid, had built up said circulation three thousand more than he was required to under the terms of his said agreement, and that in so doing plaintiff Fuller expended $24,000; and that said additional services which plaintiff Fuller had rendered to defendant in so building up said circulation over and above that which he was required to do under the terms of his said contract were of the value to defendant of, and were of the reasonable value of, at least the said sum of $24,000, which amount would be reasonable compensation therefor; and that upon the breach of said contract and the wrongful termination thereof by defendant on the 25th day of May, 1913, defendant became liable to plaintiff Fuller in the said sum of $24,000."

In the second count in the first amended petition it was alleged:

"Plaintiffs allege that if they are mistaken in their allegation as contained in paragraphs 5 and 6 of count No. 1 hereof, that on or about December 1, 1910, plaintiff and defendant, and its then president and general manager, Thomas O'Keefe, entered into a verbal agreement, as therein set out, in which it was understood and agreed that said contract should continue so long as plaintiff Fuller's services were satisfactory to the said O'Keefe, and so long as plaintiff Fuller built up the circulation to said paper on an average of thirty new circulation per week, and that, should the defendant terminate said contract at any time, the plaintiff Fuller should be entitled to and should receive thereupon adequate compensation for any and all circulation that he might at such time have added to the Times over and above said thirty per week average; then in such event plaintiff alleges:

"1st. That on or about December 1, 1910, the plaintiff Fuller's services having been entirely satisfactory to defendant and its then

president and manager, Thomas O'Keefe, the plaintiff Fuller and defendant, the said defendant acting by and through the said Thomas O'Keefe, its then president and general manager, thereunto duly authorized, made, and entered into a verbal agreement continuing said written contract on the same terms and conditions as were set out in said written contract for the term of five years from and after the 1st day of December, 1910, with the exception that the defendant and its said manager should not have the right to terminate said contract, during said term of five years, so long as plaintiff added to the subscriptions to said paper on an average of thirty new circulation per week.

"2d. Plaintiff alleges that, during said time which he was so connected with the defendant company, the defendant, acting by and through its said president and general manager, Thomas O'Keefe, constantly and continuously urged upon plaintiff Fuller that he build up said circulation at a greater rate than thirty per week on an average, it being at all times understood and agreed by and between the plaintiff Fuller and defendant that he would be allowed to continue said contract as circulation manager of the Times for the said term of five years, and that at the request and at the solicitation of the said Thomas O'Keefe, president and general manager of the defendant, as aforesaid, plaintiff Fuller, with diligence and at great expense to himself, and out of his own funds, diligently and successfully built up, and continued to build up, the circulation of said paper at a much greater rate than thirty new circulation per week, until on or about the 25th day of May, 1913, when the actual bona fide paid circulation of said paper, by and through the efforts of said plaintiff Fuller, had become and was approximately nine thousand six hundred (9,600), and that at great expense to himself and under the solicitation of the defendant and the said Thomas O'Keefe, its said president and general manager as aforesaid, three thousand more than he was required to obtain under the terms of his said agreement, and that in so doing, in adding 3,000 new circulation, Fuller expended the sum of twenty-four thousand ($24,000) dollars; and that said additional circulation, which plaintiff Fuller has added for defendant in so building up said circulation over and above that which he was required to do under the terms of said contract, was of the value to defendant of at least the sum of twenty-four thousand ($24,000) dollars in El Paso, Texas, at said time, and, if same did not have a market value, then same was of the actual value of twenty-four thousand ($24,000) dollars at said time and place, and that had plaintiff Fuller been allowed to continue under said contract for said term of five years he would have realized much more than the net sum of twenty-four thousand ($24,000) dollars over and above all expenses of every kind, and over and above any sums of money which he has received; and that by the breach of said contract by defendant plaintiffs have been damaged in the said sum of twenty-four thousand ($24,000) dollars over and above all matters alleged in other paragraphs of this count, and of the paragraphs of count No. 1 which are adopted in this count; and the plaintiffs allege that on or about said 25th day of May, 1913, defendant wrongfully, and without cause, and without ground of dissatisfaction, breached and terminated said contract, and ousted plaintiff Fuller from his position of circulation manager of the Times, and refused to deliver papers to the plaintiff Fuller, thereby making it impossible for him to serve his subscribers, and appropriated said circulation to its own use and benefit, and refused to have a settlement with him or pay him the said amounts due him, though he demanded same."

In the third amended petition the plaintiffs repeat the allegations regarding the written contract evidenced by the letter of May 30, 1910, and its acceptance, and that Fuller entered upon the performance thereof, and that on December 1, 1910, Fuller and the defendant company verbally agreed and contracted with each other that the said contract evidenced by said letter and its acceptance be renewed and extended as written,

"with the following verbal changes, modifications, and additions, and others which it is not necessary for the purpose of this pleading to state, and to continue in effect for five years from December 1, 1910, unless it was terminated at an earlier date under some of its provisions, said changes, modifications, and additions being, among others, substantially as follows:

"(a) Said Fuller agreed and bound himself to increase the paid bona fide circulation of the El Paso Morning Times by thirty per week from August 1, 1910, of bona fide reasonably permanent average circulation, including subscriptions and sales of said paper, and upon his failing to do so the defendant might for such failure terminate the contract at any time, when such new circulation should not be increased upon the average of thirty per week computed from August 1, 1910, to the end of any week ending December 1, 1910.

"(b) The parties to said contract agreed, as they had before verbally agreed, that said Fuller should serve all paid in advance subscriptions which were on the books on June 1, 1910, and such exchanges and complimentary copies as might be essential to the best interests of the paper at actual cost of service.

"(c) It was further agreed and stipulated in said verbal additions to said written contract, which were to form a part of it as extended, that plaintiff Fuller might proceed to discharge his obligations under said contract in any less period than five years by securing, as early as he might obtain, a total increase circulation equal to thirty additional bona fide and reasonably permanent average circulation for the period to elapse from August 1, 1910, to the end of five years from December 1, 1910; and that, should the defendant company see proper to terminate said contract before the end of said five years for any reason, the said company agreed and bound itself to pay to the said Fuller at said time the value of the increased bona fide reasonably permanent average circulation, including average sales of papers and average subscribers obtained by said Fuller over and above the average increase of thirty per week of such circulation from August 1, 1910, it being agreed that the said amount of bona fide circulation had by said company of said paper on August 1, 1910, including sales and subscriptions, was two thousand (2,000)."

It was then alleged, further, that Fuller and the company entered upon the performance of the renewed contract, and continued to perform same until May 25, 1913, and that Fuller increased the circulation by more than 7,637 bona fide and reasonably permanent average additional circulation of the paper above the 2,000 circulation of August 1, 1910, making an added circulation of 3,257 above the 30 per week up to May 25, 1913, when defendant terminated the contract, and that the value of said 3,257 circulation was the sum of $32,570, for which he sued.

[1, 2] The point made by the appellant is that the third amendment sets up a new cause of action from that declared upon in the first amendment, and, having been filed more than two years subsequent to the accrual of the cause of action, the same is barred by limitation. In Lumber Co. v. Water Co., 94 Tex. 456, 61 S. W. 707, Justice Brown considered the question of limitation with respect to a cause of action arising out of contract, and held that, if the facts alleged in the amended petition did not express substantially the same contract as that set up in the original petition, then the amendment was to be considered as setting up a new cause of action and barred. It was distinctly held not to be sufficient that the causes of action asserted in the two petitions must be similar in their nature, but that they must be essentially identical. In determining the identity of the causes of action, Justice Brown in that case applied two tests, namely: (1) Would the same evidence support both of the pleadings? (2) Are the allegations subject to the same defenses? The test to be applied in determining the identity of causes of action may vary in different cases, as was recognized in the cited case, but we are of the opinion that the two just indicated furnish the safest guide for the determining of the question here.

Examining the oral contract declared upon in the third amendment, it is very different from the one set up in the first amendment. The differences cannot be regarded as minor, but they are radical, materially changing the obligations of each of the parties thereto. The same evidence would not at all support the allegations made in both of the petitions. Under the allegations of the first count in the first amendment the plaintiffs must have proven a contract continuing the written contract for no definite period, except that appellant would not have a right to terminate the contract so long as Fuller built up the circulation on an average of 30 per week new circulation, and so long as Fuller's services were satisfactory to the manager, O'Keefe, and that, if appellant did terminate the contract, Fuller would be paid adequate compensation for circulation added over and above the 30 per week. Under the third amendment Fuller would have proved a contract to continue in effect for five years, with the privilege to Fuller of discharging his obligations in less than five years. Further, that if appellant terminated the contract before the end of the five years, the company had expressly agreed to pay the value of the increased circulation over and above the 30 per week increase. It is thus seen that in the third amendment Fuller has materially changed the terms of the verbal contract declared upon in the first count of the first amendment. In said first count of the first amendment Fuller alleged the measure of his recovery to be a quantum meruit, while in the third amendment he has declared upon an express contract to pay the value of the increased circulation over and above 30 per week. He has altogether shifted his ground. In the second count of the first amendment the employment of Fuller was to continue so long as his services were satisfactory to O'Keefe, and so long as he built up the circulation on an average of 30 new circulation per week, and if the company terminated the contract at any time Fuller was to be paid adequate compensation for the increased circulation over and above 30 per week. The allegation that he was to receive adequate compensation was nothing more than a declaration upon a quantum meruit. There are other important differences in the contracts set up in the two petitions, but it would serve no purpose to further pursue that phase of the matter. We think that the quotations made from the pleadings plainly show that the oral contract declared upon in the third amendment is radically different from the contract set up in either the first or second counts of the first amendment; that the contract declared upon in the third amendment would be subject to different defenses to the one set up in the first amendment, and, under the cases cited above, the third amendment, therefore, must be regarded as setting up a new and distinct cause of action from that asserted in the first amendment. The case of Ry. Co. v. Scott, 75 Tex. 84, 12 S. W. 995, is very much in point. In that case the original petition alleged a breach of an obligation on part of defendant to plaintiff to give him employment "for whatever length of time petitioner might desire to retain such employment." By amendment the obligation alleged was to give employment "for the period and term of the natural life of the plaintiff." It was held that the amendment set up a new and different contract, and that the cause of action for the breach thereof was barred by limitation. Justice Henry, in passing upon the question, said:

"We think the amended petition sets up an essentially different contract from the one alleged in the original petition. The parties and the inducement, or consideration, are the same, but these things do not in either instance constitute the whole of the undertaking."

This last-cited case alone would be sufficient authority to require this court to rule adversely to appellees upon the question of limitation, but in support, further, of the view that the third amendment sets up a new cause of action, see the following authorities: Booth v. Packing Co., 105 S. W. 46; Ry. Co. v. Bracht, 157 S. W. 269; Ry. Co. v. Ryan, 170 S. W. 858; Griffin v. Allison, 138 S. W. 1068; Texas Co. v. Alamo Co., 168 S. W. 66.

All of the assignments of error presented by the appellant, in one form or another, relate to the item of $16,285. We think there is no merit in any of the contentions made except as to the question of limitation, which is sustained.

[3] Appellee contends that there is no pleading on the part of appellant raising the question of limitation. This contention arises upon the following condition of the record: When the second amended petition was filed the defendant thereupon filed an amended answer to said petition, asserting that the cause of action declared upon was barred by the two years' statute of limitation. Thereafter the third amended petition was filed, and defendant filed no further pleading. In Erskine v. Wilson, 20 Tex. 78, the plaintiff had declared upon a promissory note, in bar of which defendant pleaded limitation. By amendment the plaintiff pleaded a renewal of the note in writing. To this amendment no further pleading was filed by the defendant. The court said:

"The amendment, introducing a new cause of action, is to be reviewed in the light of a new suit, or as the bringing of the suit as respects the cause of action therein set forth (Williams v. Randon, 10 Tex. 74); and, if the defendant would have relied on the statute as a bar, he should have pleaded it in bar of the new suit or cause of action introduced by the amendment. Not having done so, it cannot avail him in this court."

To the same effect are Stoker v. Patton, 35 S. W. 64, and Bangs v. Crebbin, 29 Tex. Civ. App. 385, 69 S. W. 441. The authority of these cases would sustain the appellees in their contention that appellant had failed to interpose a proper plea of limitation to the cause of action set up in the third amended petition, if the third amendment asserted a new and distinct cause of action from that set up in the second amendment. But if the second amendment and the third amendment declared upon the same cause of action, then the pleading filed by the defendant would be responsive to the third amended petition, and it would not be necessary for it to amend its answer. Byers v. Carll, 7 Tex. Civ. App. 423, 27 S. W. 190; 31 Cyc. 460. Examining the contract declared upon in the second amendment, we find that it declared upon the written contract evidenced by the letter of May 30, 1910, and its acceptance,

"with the following verbal changes, modifications, and additions, and to continue in effect for five years from December 1, 1910, unless it was terminated at an earlier date under some of its provisions, said changes, modifications, and additions being substantially as follows:

"(a) Said Fuller agreed and bound himself to increase the paid circulation of the El Paso Morning Times, as per said contract of May 30, 1910, by thirty per week from August 1, 1910, or upon an average of thirty per week from August 1, 1910, and upon his failing to do so the defendant might for such failure terminate the contract at any time when the new circulation should not be increased upon the average of thirty per week computed from August 1, 1910, to the end of any week ending after December 1, 1910.

"(b) The parties to said contract agreed, as they had before verbally agreed, that said Fuller should have all paid in advance subscribers who were on the books on June 1, 1910, and such exchanges and complimentary copies as might be essential to the best interests of the paper, at actual cost of service.

"(c) It was further agreed and stipulated in said verbal additions to said written contract, which were to form a part of it as extended, that plaintiff Fuller might proceed to discharge his obligations under said contract in any less period than five years by securing as early as he might obtain a total increased circulation equal to thirty additional circulation per week for the period to elapse from August 1, 1910, to the end of five years from December 1, 1910; and that, should the defendant company see proper to terminate said contract before the end of said five years for any reason, the said company agreed and bound itself to pay to the said Fuller at said time the value of the increased bona fide circulation obtained by said Fuller over and above the average increase of thirty per week from August 1, 1910, it being agreed that the said amount of bona fide circulation had by said company of said paper on August 1, 1910, was two thousand (2,000)."

It will be noted there is no substantial difference in the contract declared upon in the third amendment from that declared upon in the second amendment. The third amendment simply describes more fully the character of circulation which Fuller bound himself to obtain. It particularizes as to the character of the circulation. In the second amendment the circulation was simply described as "paid circulation," whereas in the third amendment it is described as paid bona fide circulation of a reasonably permanent average nature, including subscriptions and sales. In other words, the third amendment more particularly describes the character of circulation required to be obtained by Fuller than it was described in the second amendment. There being no material difference in the contract declared upon in the third amendment from that declared upon in the second amendment, we are of the opinion, under the authorities last cited, that appellant was not required to file an amended answer in response to the third amended

petition, and that the plea of limitation was properly presented.

Under the view which we entertain of this case, it follows, that appellees cannot recover the item of $16,285, and deducting that amount from the judgment they are properly entitled to recover leaves the sum of $948.82 with interest. The judgment is therefore reversed, and here rendered in favor of appellees for said sum of $948.82, with interest thereon at the rate of 6 per cent. per annum from May 25, 1913.

Reversed and rendered.