**FULLER et al. v. EL PASO TIMES CO.**
(No. 239–3429.)

(Commission of Appeals of Texas, Section B. Jan. 4, 1922.)

1. Pleading ⊙248(2) — Amended pleading abandoning alternative does not set up new cause of action.

An amended pleading which merely abandons one of two causes of action pleaded in an alternative petition does not set up a new cause of action; it being sufficient if the amended petition contain, even as part of the cause of action asserted in the former pleading, substantially similar allegations.

2. Pleading ⊙248(4)—Amended pleading alleging duration of contract for definite period held not to set up new cause of action.

Where a petition, in an action for breach of contract, pleaded a renewal of the original contract, except that it was agreed that it should not be terminated so long as plaintiffs' services were satisfactory to defendant, a subsequent amended petition alleging that the renewed contract was for a definite term of five years did not set up a new cause of action, where such allegation was qualified by the expression, "unless it was terminated at an earlier date," and it was also pleaded that the original contract was renewed "as it was written" except as to emendations pleaded.

3. Pleading ⊙248(4)—Allegation of amended petition that contract was for definite period held not to set up new cause of action in suit for amount due thereunder when terminated.

Where an amended petition, in a former circulation manager's action against a newspaper to recover an amount due under his contract for circulation secured by him in excess of 30 per week, up to the time the contract was terminated by defendant, conceded, as did the former petition, that defendant had the right to terminate the contract, and sought no recovery because of a premature abrogation thereof, an additional allegation that the contract was for a period of five years, did not set up a new cause of action.

⊙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Pleading** &#9758;248(4)—**Amended · petition for recovery of value of increased circulation, instead of "adequate compensation" for additional services, held not to set up new cause of action.**

Where a former circulation manager of a newspaper, in an action for breach of contract, alleged he was to receive adequate compensation for all circulation in excess of 30 per week added by him up to the time of the termination of the contract by defendant, and prayed recovery of reasonable compensation for "additional services" rendered in building up such circulation, a subsequent amended petition seeking recovery for the "value of the increased circulation" did not set up a new cause of action; "adequate compensation" for the increased circulation, even if not used interchangeably with "value of increased circulation," meaning, not compensation for the value of the services rendered, but the value of the circulation itself.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adequate Compensation.]

**5. Pleading** &#9758;248(1)—**No new cause of action where allegations of amended pleading are substantially same, and same evidence supports both pleadings.**

No new cause of action is set up by an amended pleading where the allegations of both pleadings are substantially the same, substantially the same evidence supports both, and both are subject to the same defenses.

**6. Pleading** &#9758;248(4)—**Amended petition declaring on same contract, though differing as to terms and effect thereof, did not set up new cause of action.**

An amended petition declaring on the same transactions in an action growing out of the same oral contract by way of renewal of the same written contract, with some verbal emendations,' did not set up a new cause of action where the only differences between the pleadings related to the terms and effect of such contract.

**7. Limitation of actions** &#9758;123, 127(4)—**Complaint defectively alleging cause of action stops running of statute, and amendment pleading same contract not barred.**

An amended petition in action on contract, pleading the same transaction as alleged in the original petition, and including parts of the contract as originally pleaded, cannot be outlawed by the statute of limitations even where the original petition was subject to general demurrer, if the original petition described the cause of action with such certainty as to reasonably apprise defendant thereof.

Appeal from Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Lucius Fuller and another against the El Paso Times Company. From a judgment of the Court of Civil Appeals (215 S. W. 113) reversing a judgment of the district court for plaintiffs, they appeal. Reversed, and judgment of district court affirmed.

Geo. E. Wallace and F. G. Morris, both of El Paso, for appellants.

Turney, Burges, Culwell, Holliday & Pollard and T. A. Falvey, all of El Paso, for appellee.

POWELL, J. The nature and result of this suit have been clearly stated by the Court of Civil Appeals (215 S. W. 113) as follows:

"Appellee Fuller brought this suit on July 9, 1913, against appellant, El Paso Times Company. Later appellee C. B. Gordon, claiming an interest in Fuller's cause of action, by agreement with Fuller joined in the suit as a party plaintiff. From a verdict and judgment in favor of Fuller and Gordon, the El Paso Times Company presents this appeal. The causes of action declared upon relate to several demands against appellant. There is no question raised by this appeal except as to an item of $16,-285, found in favor of the appellees, and appellant asserts that the cause of action upon which this item of recovery is based is barred by limitation. This question of limitation arises out of the fact that the third amended petition, upon which the cause was tried, was filed more than two years after the cause of action accrued, and it is asserted that this amendment introduced a new cause of action. It is immaterial how Fuller pleaded his case in the original petition, because his first amended petition was filed in less than two years after the cause of action arose.

"The second and third amendments were both filed more than two years after the cause of action accrued, and in determining the question of limitation it is necessary to consider only the allegations of the first and third amendments. The pertinent allegations of the first amendment are as follows:

"That on May 30, 1910, Fuller entered into a written contract with appellant, evidenced by letter and its acceptance, which reads:

" 'El Paso, Tex., May 30, 1910.

" 'Mr. Thomas O'Keefe, El Paso Times Co., El Paso, Texas.

" 'Dear Sir: In accordance with our conversation this p. m. in regard to my conducting the circulation of the El Paso Times, I beg to submit the following proposition:

" 'I will take charge of said circulation (under your direction) giving all my time and my best service, to the end that said circulation be conducted in an up-to-date manner to your entire satisfaction. You are to allow me any and all profits that may accrue from the conduct of said circulation over and above three-quarters of one cent per copy, with the exception of such subscriptions as may now be paid in advance; these latter I agree to deliver for you at the cost of such delivery to me, which I guarantee will not be over fifteen and one-half cents per copy per month. And I further agree that commencing on the 1st day of August, 1910, I will increase the bona fide paid circulation of the El Paso Times by at least thirty new subscribers per week for the ensuing eighteen weeks.

" 'All moneys received by said department are

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to be turned over to you daily, and all circulation expense bills, which I am to bear, including transportation, postage, carrier, salaries, bookkeeper salary, etc., are to be paid by you on vouchers furnished by you countersigned by myself, and, when so countersigned, to be charged against my profits over and above the said three-quarters of one cent per copy. All accounts for expenses are to be paid on or before the first day of the month following, and settlement made with me after deducting all expenses during the ten days next ensuing.

" 'You are to furnish all necessary storeroom, office space, and office equipment that may be required in the conduct of said circulation department including lights.

" 'All checks, orders, etc., etc., are to be made payable to the El Paso Times Company, and in no case are they to be made payable to others without your written permission. No one in my employ shall have the right to collect moneys for subscriptions except upon my order countersigned by you.

" 'This agreement may be abrogated by you without previous notice at any time when you believe I am not giving you proper service.

" 'All books, accounts, and, etc., etc., are always the property of the El Paso Times Company, and are to remain always in your possession, together with the office equipment, etc.

" 'It is understood that I am to take charge of said circulation department on the first day of June, 1910, subject to the terms and conditions as above mentioned, until December 1st, next, when we will make a new agreement to cover further time.

" 'Respectfully,
" '[Signed] Lucius Fuller.
" 'Accepted this 30th day of May, 1910.
" 'El Paso Times Co.,
" 'Thos. O'Keefe.'

"That Fuller entered upon the performance of said contract, and, having performed the same satisfactorily, the parties entered into a verbal agreement continuing the contract. The allegations in the first count, as to the verbal agreement, are as follows:

" '(5) That on or about the 1st day of December, 1910, the plaintiff Fuller's service having been entirely satisfactory to defendant, and its said president and manager, Thomas O'Keefe, the plaintiff Fuller and defendant, acting by and through the said Thomas O'Keefe, its then president and general manager, thereunto duly authorized, made and entered into a verbal agreement continuing said written contract upon the same terms and conditions as set out in said written contract, except that it was then and there understood and agreed that the said O'Keefe should not have a right to terminate said contract so long as the plaintiff Fuller complied with his part of said contract, and built up the circulation to said paper on an average of thirty a week new circulation, and so long as plaintiff Fuller's services were satisfactory to the said O'Keefe; and plaintiff alleges that it was understood and agreed that, should the said defendant or O'Keefe for any cause terminate said contract, the plaintiff Fuller should be entitled to and should thereupon receive adequate compensation for any and all circulation which he might have added, at the time of such termination

thereof, to the Times over and above the said thirty per week on an average.

" '(6) Plaintiffs allege that, during the time which he was so connected with defendant company, the defendant, acting by and through its said president and manager, Thomas O'Keefe, constantly and continuously urged upon plaintiff Fuller that he build up said circulation at a greater rate than thirty per week on an average, it being at all times understood and agreed by and between plaintiff Fuller and defendant that he should be allowed to continue as circulation manager of the Times, under the terms of said contract, for such length of time, in any event, as would enable him to reap an adequate compensation for his services in connection therewith, and that, should the defendant terminate said contract, the plaintiff Fuller should be entitled to and should thereupon receive adequate compensation for any and all circulation that he might at such time have added to the Times over and above said thirty per week average.

" '(7) That at the request and at the solicitation of the said Thomas O'Keefe, president and manager, as aforesaid, the plaintiff Fuller, with diligence and at great expense to himself and out of his own funds, diligently and successfully built up and continued to build up, the circulation of said paper, until on or about the 1st day of May, 1913, when the actual bona fide paid circulation of said paper, by and through the efforts of plaintiff Fuller, had become and was approximately 9,600; and plaintiff Fuller is informed and believes, and alleges the fact to be, that when he was wrongfully discharged on May 25, 1913, the bona fide paid circulation to defendant's paper was at least 9,600; and that plaintiff Fuller, at great expense to himself, and under the solicitation of the defendant and the said Thomas O'Keefe, its president and general manager, as aforesaid, had built up said circulation three thousand more than he was required to under the terms of his said agreement, and that in so doing plaintiff Fuller expended $24,000; and that said additional services which plaintiff Fuller had rendered to defendant in so building up said circulation over and above that which he was required to do under the terms of his said contract were of the value to defendant of, and were of the reasonable value of at least the said sum of $24,000, which amount would be reasonable compensation therefor, and that upon the breach of said contract and the wrongful termination thereof by defendant on the 25th day of May, 1913, defendant became liable to plaintiff Fuller in the said sum of $24,000.'

"In the second count in the first amended petition it was alleged:

" 'Plaintiffs allege that if they are mistaken in their allegation as contained in paragraphs 5 and 6 of count No. 1 hereof, that on or about December 1, 1910, plaintiff and defendant, and its then president and general manager, Thomas O'Keefe, entered into a verbal agreement, as therein set out, in which it was understood and agreed that said contract should continue so long as plaintiff Fuller's services were satisfactory to the said O'Keefe and so long as plaintiff Fuller built up the circulation to said paper on an average of thirty

new circulation per week, and that, should the defendant terminate said contract at any time, the plaintiff Fuller should be entitled to and should receive thereupon adequate compensation for any and all circulation that he might at such time have added to the Times over and above said thirty per week average; then in such event plaintiff alleges:

" '(1) That on or about December 1, 1910, the plaintiff Fuller's services having been entirely satisfactory to defendant and its then president and manager, Thomas O'Keefe, the plaintiff Fuller and defendant, the said defendant acting by and through the said Thomas O'Keefe, its then president and general manager, thereunto duly authorized, made, and entered into a verbal agreement continuing said written contract on the same terms and conditions as were set out in said written contract for the term of five years from and after the 1st day of December 1910, with the exception that the defendant and its said manager should not have the right to terminate said contract, during said term of five years, so long as plaintiff added to the subscriptions to said paper on an average of thirty new circulation per week.

" '(2) Plaintiff alleges that, during said time which he was so connected with the defendant company, the defendant, acting by and through its said president and general manager, Thomas O'Keefe, constantly and continuously urged upon plaintiff Fuller that he build up said circulation at a greater rate than thirty per week on an average, it being at all times understood and agreed by and between the plaintiff Fuller and defendant that he would be allowed to continue said contract as circulation manager of the Times for the said term of five years, and that at the request and at the solicitation of the said Thomas O'Keefe, president and general manager of the defendant, as aforesaid, plaintiff Fuller, with diligence and at great expense to himself, and out of his own funds, diligently and successfully built up, and continued to build up, the circulation of said paper at a much greater rate than thirty new circulation per week, until on or about the 25th day of May, 1913, when the actual bona fide paid circulation of said paper, by and through the efforts of said plaintiff Fuller, had become and was approximately nine thousand six hundred (9,600), and that at great expense to himself and under the solicitation of the defendant and the said Thomas O'Keefe, its said president and general manager as aforesaid, three thousand more than he was required to obtain under the terms of his said agreement, and that in so doing, in adding said 3,000 new circulation, Fuller expended the sum of twenty-four thousand ($24,000) dollars, and that said additional circulation, which plaintiff Fuller has added for defendant in so building up said circulation over and above that which he was required to do under the terms of said contract, was of the value to defendant of at least the sum of twenty-four thousand ($24,-000) dollars in El Paso, Texas, at said time, and, if same did not have a market value, then same was of the actual value of twenty-four thousand ($24,000) dollars at said time and place, and that had plaintiff Fuller been allowed to continue under said contract for said term of five years he would have realized much more than the net sum of twenty-four thousand ($24,000) dollars over and above all expenses of every kind, and over and above any sums of money which he has received; and that by the breach of said contract by defendant plaintiffs have been damaged in the said sum of twenty-four thousand ($24,000) dollars over and above all matters alleged in other paragraphs of this count, and of the paragraphs of count No. 1 which are adopted in this count; and the plaintiffs allege that on or about said 25th day of May, 1913, defendant wrongfully, and without cause, and without ground of dissatisfaction, breached and terminated said contract, and ousted plaintiff Fuller from his position of circulation manager of the Times, and refused to deliver papers to the plaintiff Fuller, thereby making it impossible for him to serve his subscribers, and appropriated said circulation to its own use and benefit; and refused to have a settlement with him or pay him the said amounts due him, though he demanded same.'

"In the third amended petition the plaintiffs repeat the allegations regarding the written contract evidenced by the letter of May 30, 1910, and its acceptance, and that Fuller entered upon the performance thereof, and that on December 1, 1910, Fuller and the defendant company verbally agreed and contracted with each other that the said contract evidenced by said letter and its acceptance be renewed and extended as written, 'with the following verbal changes, modifications, and additions, and others which it is not necessary for the purpose of this pleading to state, and to continue in effect for five years from December 1, 1910, unless it was terminated at an earlier date under some of its provisions, said changes, modifications, and additions being, among others, substantially as follows:

" '(a) Said Fuller agreed and bound himself to increase the paid bona fide circulation of the El Paso Morning Times by thirty per week from August 1, 1910, of bona fide reasonably permanent average circulation, including subscriptions and sales of said paper, and upon his failing to do so the defendant might for such failure terminate the contract at any time, when such new circulation should not be increased upon the average of thirty per week computed from August 1, 1910, to the end of any week ending December 1, 1910.

" '(b) The parties to said contract agreed, as they had before verbally agreed, that said Fuller should serve all paid in advance subscriptions who were on the books on June 1, 1910, and such exchanges and complimentary copies as might be essential to the best interests of the paper at actual cost of service.

" '(c) It was further agreed and stipulated in said verbal additions to said written contract, which were to form a part of it as extended, that plaintiff Fuller might proceed to discharge his obligations under said contract in any less period than five years by securing, as early as he might obtain a total increased circulation equal to thirty additional bona fide and reasonably permanent average circulation for the period to elapse from August 1, 1910, to the end of five years from December 1, 1910; and that, should the defendant company see proper to terminate said contract before the end of said five years for any reason, the said com-

pany agreed and bound itself to pay to the said Fuller at said time the value of the increased bona fide reasonably permanent average circulation, including average sales of papers and average subscribers obtained by said Fuller over and above the average increase of thirty per week of such circulation from August 1, 1910, it being agreed that the said amount of bona fide circulation had by said company of said paper on August 1, 1910, including sales and subscriptions, was two thousand (2,000).'

"It was then alleged, further, that Fuller and the company entered upon the performance of the renewed contract, and continued to perform same until May 25, 1913, and that Fuller increased the circulation by more than 7,637 bona fide and reasonably permanent average additional circulation of the paper above the 2,000 circulation of August 1, 1910, making an added circulation of 3,257 above the thirty per week up to May 25, 1913, when defendant terminated the contract, and that the value of said 3,257 circulation was the sum of $32,570, for which he sued."

The Court of Civil Appeals in another portion of its opinion held, and we think correctly, that the allegations in the second and third amended petitions were substantially the same.

The case was tried upon special issues before a jury, and judgment rendered in favor of plaintiffs for the aggregate of the aforesaid $16,285, and the further sum of $948.82, with interest thereon from May 25, 1913, at the rate of 6 per cent. per annum.

The Court of Civil Appeals held that the third amended petition aforesaid set up a new cause of action from that declared upon in the first amended petition, and, the former having been filed more than two years subsequent to the accrual of the cause of action therein pleaded, the same was barred by limitation. So holding, that court reversed the judgment of the trial court, striking out the item of $16,285, and rendered judgment only for the aforesaid sum of $948.82, with interest as before. See 215 S. W. 113.

The Court of Civil Appeals overruled all other assignments of error raised by the defendant in error, and the controlling question upon this appeal is whether or not that court erred in holding that the third amended petition set up a new cause of action so as to be within the bar of the two-year statute of limitation. The question is not without some difficulty, but, upon a thorough consideration of the decisions of our courts, and what we think is a proper analysis of the pleadings, we have reached the conclusion that the Court of Civil Appeals erroneously decided that issue.

[1] Under our system of pleading, plaintiffs are given much latitude in stating their causes of action, and entitled to plead in the alternative. The first amended petition was an alternative one, and we think the Court of Civil Appeals has fallen into error largely by reason of comparing the third amended petition with the second count, rather than the first count, of the first amended petition. Under our law, as said by Justice Stayton in case of State v. Snyder, 66 Tex. 687, 18 S. W. 106, an amended pleading which merely abandons a part of a cause of action set up in the original petition does not set up a new cause of action. It is only essential that the amended pleading, upon which the trial was had, was not substantially different from some portion of the former pleading. If each of the amended petitions herein contained, even as part of the cause of action therein asserted, substantially similar allegations, there was no new cause of action. This is well settled by our Supreme Court in the case of Bigham v. Talbot, 63 Tex. 271.

[2] Applying above principles to the pleadings before us, what do we find? It is true that the pleadings may not be said to be happily framed, but upon close analysis we think it will be found that the first count in the first amended petition contains allegations of a cause of action not substantially or materially different from that alleged in the third amended pleading upon which the trial was had.

In the first place, the Court of Civil Appeals says that a new cause of action was set up because, in the third amended pleading, the contract was alleged to cover a definite period of five years, whereas the duration thereof was indefinite according to the allegations in the first count of the first amended petition. We do not think this is the true status of the pleadings upon this point. In the first count of the first amended petition, plaintiff pleaded the original contract of May 30, 1910, and its performance by Fuller by way of inducement to the renewal thereof, but without alleging any breach of the original contract. Then, in paragraph 5 of said first amended petition, plaintiff pleaded a renewal of said contract on December 1, 1910, except that it was agreed that it should not be terminated as long as Fuller complied with his part of the contract, or "so long as plaintiff's services were satisfactory to the said O'Keefe." This, in substance, made the contract terminable at the will and pleasure of manager O'Keefe. We think, although somewhat veiled, the same character of duration of the contract was pleaded in the third amended petition. It is true, the latter contained an allegation that the renewed contract was for a term of five years. Still this allegation was qualified by the expression, "unless it was terminated at an earlier date under some of its provisions." It was pleaded also, in that same connection, that the original contract was renewed as it was written, except as to emendations pleaded. The original contract permitted the Times to terminate the same at its pleasure. So, after all, this third amended pleading admitted the same right of the Times to terminate the contract at any time

as did the first amended pleading. Consequently, substantially the same proof would have sufficed to establish the allegation of either pleading as to the duration of the contract.

[3] But, aside from above, this five-year term allegation was absolutely an immaterial addition to the third amended pleading. The latter pleading sought absolutely no recovery because of a premature abrogation of the contract. It conceded, as did the first count in the first amended petition, that the Times had the right to terminate the contract as it did, and only sought a judgment for the value of the circulation over 30 per week which had been added up to the time the contract was terminated. Properly construed, we think that was the identical prayer of the first count of the first amended petition, as we shall hereafter attempt to show. The only time the action was based upon an alleged improper and premature termination of the contract was in the second count of the first amended pleading. That count was entirely abandoned in the third amendment. Consequently, this alleged variance in the pleadings, even if a variance, was absolutely immaterial, and should not be held, in our view, to set up a new cause of action and destroy a man's valuable rights.

[4] Again, the Court of Civil Appeals says a new cause of action was set up because, in the first count of the first amended petition, Fuller alleged the measure of his recovery to be a quantum meruit, while in the second amendment he had declared upon an express contract to pay the value of the increased circulation over and above 30 per week. We do not think the pleadings justify this conclusion.

It is true that the third amended pleading asks recovery for the value of the increased circulation over and above 30 per week. So does the first count of the first amended pleading, as we see it, both expressly and impliedly. For instance, in one part of the first count of this first amended pleading Fuller says he was to receive "adequate compensation for any and all circulation which he might have added at the time of such termination thereof to the Times over and above the said 30 per week, on an average." Later along, as explanatory thereof, he pleads in the same first count as follows:

"Said additional services which plaintiff Fuller had rendered to defendant in so building up said circulation over and above that which he was required to do under the terms of his said contract were of the value to defendant of and were of the reasonable value of at least the said sum of $24,000, which amount would be reasonable compensation therefor, and that upon the breach of said contract and the wrongful termination thereof by defendant on the 25th day of May, 1913, defendant became liable to plaintiff Fuller in the said sum of $24,-000."

Consequently, by express allegations, Fuller asked in the first amended pleading for a recovery of adequate or reasonable compensation, which he alleged to be the same as the value of the increased circulation; but, even if "adequate compensation" and "value of increased circulation" had not been used interchangeably in the pleadings, they imply the same meaning as there used. In other words, adequate compensation for the increased circulation would naturally and essentially be the value of such circulation. The only logical way of measuring either in value or compensation would be by the other.

Defendant in error contends that "adequate compensation" as used in the pleadings means compensation for the value of the services rendered in obtaining the excess circulation. But such is not the pleading of the alleged contract. According to this pleading, the compensation is not based upon services measured by the value of the labor of a man of Fuller's skill in that particular work, but upon the value of the product of those services. The compensation is to be "for any and all circulation" above the 30 per week. It amounts to compensation as for a commodity. Therefore it is clear to us that "compensation" as used in the context in the first amended petition means the value of the circulation, and that substantially the same proof would have sustained either pleading in this respect. Therefore no new cause of action was set up along this line.

8 Cyc. p. 402, defines "compensation" thus:

"The rendering of an equivalent in value or amount; an equivalent given for property taken." "The giving back an equivalent in either money, which is but the measure of value, or in actual value otherwise conferred."

It is clear to us that circulation is the thing for which an equivalent in value is to be made under the terms used by the pleader in the first amended petition. But, even if the word "compensation" meant compensation for services, the pleading in the first amended petition is not a pleading of an implied contract, a quantum meruit, in any event. At all events, it is alleged in all the pleadings to be an express contract to pay for the excess circulation in some manner. The only indefinite feature under any theory was the amount of the compensation. If the first amended petition inaccurately pleaded this amount, then it occurs to us that the later pleading should have been permitted to correct such inaccuracy. The contract sued on in the first count of the first amended petition and in the third amended petition is the same express contract, renewed December 1, 1910, to pay in some manner for the increased circulation above 30 per week, and if the word "compensation" for circulation does not mean the same thing as the value of the circulation, then the two pleadings differ only in their allegations as to the

measure of damages arising out of the same contract, and the decisions in this state hold that a new pleading will not be regarded as pleading a new cause of action simply because of a change in the measure of damages pleaded. See Lee v. Boutwell, 44 Tex. 151; Porterfield v. Taylor, 60 Tex. 264; J. W. Raleigh & Heidenheimer Bros. v. Cook, 60 Tex. 438.

[5] If we have correctly analyzed the pleading, then the third amended petition did not set up a new cause of action when tested by the rules laid down in a very able opinion by Judge Brown of our Supreme Court in Lumber Co. v. Water Co., 94 Tex. 456, 61 S. W. 707, one of our leading cases in this connection, and the one mainly relied upon by the Court of Civil Appeals herein, as well as counsel for the Times. In that case the learned judge held that the allegations in the pleadings must be "substantially" the same, or a new cause of action would be set up; that they must be identical in their essential features. He then laid down two chief tests for the determination of this question in a given instance, and said one could safely say that no new cause of action is set up where the same evidence supports both pleadings, and the allegations of both are subject to the same defenses. As we have construed these pleadings, they clearly stand both of these tests.

In the case of Lumber Co. v. Water Co., supra, a new cause of action was clearly pleaded. In the first pleading the action was based upon an express contract. In the amended pleading the action seems to have been a suit for negligence for failure of the water company to discharge a legal duty, a duty alleged to arise not from any contract, but from a course of public business, and which was to be implied by law. Of course, a new cause of action was there apparent. The pleadings there are not at all similar to those in the case at bar. In that case the evidence upon practically every phase would have been materially different. The case at bar is an action upon the same contract and the same renewal thereof.

We cannot agree that Judge Brown intended to say in his now famous case above referred to that the pleading must be supported by exactly the same evidence. Such a construction of his opinion would be in the face of every other decision of the Supreme Court and Courts of Civil Appeals of this state, both before and after said decision was rendered. What he did say, in our judgment, was that the pleading should be supported by substantially the same evidence. This is necessarily true, for he said the pleadings should be substantially alike, not exactly alike. If the pleadings were to be only substantially alike, it would necessarily follow that the same would be true of the proof in support thereof. To show conclusively that Judge Brown did not intend to say that the proof in support of the pleadings should be exactly the same in order to avoid setting up a new cause of action, we have only to refer to the authorities cited in support of his views in the very case of Lumber Co. v. Water Co. Among his citations was the case of Boyd v. Beville, 91 Tex. 439, 44 S. W. 287, wherein our Supreme Court, in an opinion also written by Judge Brown, shortly before his opinion in Lumber Co. v. Water Co., supra, clearly held that no new cause of action would be set up by reason of the fact that very different evidence might be introduced under the two pleadings in question.

[6] We think what we have said shows that the Court of Civil Appeals erred in holding that a new cause of action was set up herein, but, in addition to what has already been said, we have certain other views in mind which convince us that no new cause of action was set up in this case. All will admit that this action, as shown by all the pleadings, grew out of the very same contract which was made on December 1, 1910, by way of renewal of the very same written contract of date May 30, 1910, with some verbal emendations. Each pleading declared upon the very same transactions, and the only possible alleged differences, if any there were, relate to the terms and effect of the contract. We think it well settled that such differences do not constitute the amended pleadings a new cause of action. See Burton-Lingo Co. v. Beyer (Civ. App.) 78 S. W. 248; Green v. Loftus (Civ. App.) 132 S. W. 502; Mayes v. Magill, 48 Tex. Civ. App. 548, 107 S. W. 363; Horse Co. v. Evans & Co. (Civ. App.) 190 S. W. 794; McCamant v. McCamant (Civ. App.) 203 S. W. 118; Young v. Bank, 223 S. W. 342.

In the case of Burton-Lingo Co. v. Beyer, supra, the court said:

"Both the original petition and the amended petition evidently declared on the same transaction, and differed only as to the terms and effect of the contract. If the original petition did not accurately or fully state the contract, it was the office of an amendment to make the correction."

So, in the case at bar, if the first pleading did not accurately or fully state the terms of the verbal renewal contract of December 1, 1910, the third amended pleading could do so without setting up a new cause of action. There really would be no office for an amendment if it should be held that every different pleading set up a new cause of action. Fuller worked two and one-half years under this verbal renewal, and the terms of a verbal contract are frequently in dispute and necessarily give rise, it seems to us, on numerous occasions for many variations in pleadings. This seems to us to be the natural result of an oral contract.

In the very recent case of Young v. Bank, supra, the court said:

"A new cause of action in our jurisprudence is one materially different from, or in addition to, that first advanced."

We submit that, under such a definition, the case at bar shows the setting up of no new cause of action.

[7] Again, there is another line of authority in Texas which strongly indicates that the statute of limitation cannot enter to outlaw a cause of action where, in the amended pleading, the pleader is evidently pleading the same transaction, and when the new pleading includes parts of the contract as it was originally pleaded. In such a case the identity of the contract is not lost, and the opposite party is put sufficiently on notice of the basis of the suit. In this very connection, the Supreme Court of Texas in case of Tarkinton v. Broussard, 51 Tex. 550, holds:

"Though the petition may be subject to special or general demurrer, yet, under our practice, if the suit is founded upon a proper cause of action, described therein with such certainty as to reasonably apprise the defendant of the same, an amendment will relate back to the date of the commencement of the suit.

"It has been decided at the present term that such petition is sufficient to stop the running of the statute of limitations. Killebrew v. Stockdale, supra, p. 535. A petition so defective as not to show that the court had jurisdiction even, may be cured by amendment. Ward v. Lathrop, 11 Tex. 291; Evans v. Mills, 16 Tex. 199."

The case just quoted was cited with approval and followed by Judge Brown in case of Boyd v. Beville, 91 Tex. 439, 44 S. W. 287. Other authorities to the same effect are: Cotter, Trulove & Co. v. Parks, 80 Tex. 539, 16 S. W. 307; Railway Co. v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 283; Railway Co. v. Clippenger, 47 Tex. Civ. App. 510, 106 S. W. 155; Gilliland v. Ellison (Civ. App.) 137 S. W. 168.

The Supreme Court denied a writ of error in each of the three cases from our Courts of Civil Appeals last cited. They are cases strongly in point with the case at bar. In the case of Railway Co. v. Mitten, supra, the action was based upon a wreck caused by a defective bridge, as originally pleaded. In the amended petition it was alleged that the wreck was not caused by any defect in the bridge itself, but in the approach to the bridge. The court held that the amended petition did not set up a new cause of action. It said:

"In the last pleadings, as in those going before, the same cause of action was alleged. It was the same wreck, at the same time and place, inflicting the same injuries upon appellee, from which resulted the same damages. To all intents and purposes, it was the identical cause of action."

Under the authorities last cited, the amended pleadings in the instant case certainly do not set up a new cause of action. To paraphrase the language of the court in the case last quoted, the pleadings under consideration in the case at bar all allege the same cause of action, for they allege the same contract, made at the same time and place, terminated in the same way, and resulting in substantially, if not exactly, the same damages. There was only one renewal, that of December 1, 1910, of the one and only written contract which ever existed between the parties. Certainly all the pleadings notified the opposite parties of the exact contract which was the basis of the action. We are thoroughly convinced that these pleadings must have been much more materially different from each other than they were before it could be held that the last one set up a new cause of action.

The various authorities we have cited have, as we view it, been abundantly sustained, in what we think is the latest expression of our Supreme Court upon the question under discussion. We refer to the case of Pope v. Railway Co., 109 Tex. 311, 207 S. W. 514. In that very recent case, Judge Greenwood gives us a most thorough and able discussion of a "new cause of action." We quote from his opinion as follows:

"Under the settled rules of pleading and practice in this state, the right to amend, so as to defeat limitation, when interposed against the cause of action which accrued, under the federal statute, to the representative of Pope's estate, cannot be doubted.

"Thouvenin v. Lea, 26 Texas, 615, announces the principle, always adhered to by this court that 'the very object of an amendment is to supply the omissions of the original pleadings. And it never has been supposed that the statute of limitation would present any impediment to its being done at any time during the progress of the cause. The statute only operates as a bar when it is sought under the name of an amendment to present a new suit.' Tribby v. Wokee, 74 Texas, 144.

"The principle has been repeatedly applied in Texas to save causes of action from the bar of limitation, when such causes of action were presented in amendments filed after the expiration of the statutory period, notwithstanding the original pleadings, which were filed within the statutory period, were so lacking in averments essential to the statement of a cause of action as to be bad on general demurrer. Western U. Tel. Co. v. Smith, 146 S. W. 333; Boyd v. Beville, 91 Tex. 443, 444, 44 S. W. 287; Bigham v. Talbot, 63 Tex. 273."

In order to show the two amendments which the Supreme Court permitted in the case last quoted, without constituting the new pleading a new cause of action, we refer to the syllabus in said case as follows:

"The widow and children of a deceased employee sued for his death, with no allegation showing whether or not his injuries were received in interstate commerce. Recovery by them was reversed on the ground that, being

so engaged, the action must be by the legal representatives, in accordance with the federal statute. Held, that an amendment making the legal representative of deceased plaintiff, and alleging that he met his death in interstate commerce, would not introduce a new cause of action. The Supreme Court would not refuse to remand on the ground that such action would thus be barred by limitation."

In that case it was held that, after all, the injuries grew out of one and the same accident. So it was in the case at bar. There was only one contract and one renewal. Its identity was retained in all the pleadings.

Under the decision by Judge Greenwood, aforesaid, it seems clear to us that no new cause of action was set up in the case at bar, for certainly the first amended pleading was sufficient on general demurrer. In that case Judge Greenwood reiterated the oft-expressed doctrine of our Supreme Court that, even where the original petition was subject to general demurrer, the cause of action could be described with great particularity thereafter in an amended pleading without constituting the latter the statement of a new cause of action.

Under any and all of the authorities we have reviewed upon any of the theories discussed, we are convinced that no new cause of action has been pleaded herein, and that Fuller's rights should not be barred by the statute of limitation. He commenced this action in two or three months after his contract had been terminated, and his attorneys never failed in any pleading to identify the very contract sued upon. Under those circumstances, and bearing that fact always in mind, we cannot agree that a plea, so largely of a technical nature, should be permitted to deprive him of his rights and thereby work a very great injustice.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

⬤➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes