## FLATOW, RILEY & CO. v. ROY CAMPBELL CO.  (No. 7323.)*

(Court of Civil Appeals of Texas. San Antonio. March 11, 1925. Rehearing Denied April 1, 1925.)

**1. Limitation of actions ⧫127(4)—Test to determine whether two contracts are the same stated.**

The test to determine whether contracts set up in original and amended petitions are the same as respects limitations is whether the same testimony would sustain each.

**2. Limitation of actions ⧫127(13)—Amended petition held to set up a different contract than alleged in original petition.**

Amended petition, which alleged that contract of sale was rescinded and a new contract made to repay purchase price, *held* to set up a different cause of action from that alleged in original petition, which sought recovery for breach of contract of sale, since same testimony would not sustain each contract.

**3. Sales ⧫396 — Petition on contract rescinding contract of sale should allege promise to pay.**

Petition seeking to recover price paid for onions as on a new contract rescinding contract of sale should allege promise to pay.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by Flatow, Riley & Co. against the Roy Campbell Company. From judgment of dismissal, plaintiffs appeal. Affirmed.

Mann, Neel & Mann, of Laredo, for appellants.

J. D. Dodson and U. S. Algee, both of San Antonio, for appellee.

FLY, C. J. This is an appeal from a judgment of dismissal on the ground that a new cause of action had been alleged in the second amended original petition, which was barred by four years' limitation. The cause of action accrued on May 28, 1919, when the onions ordered by appellants from appellee reached Cincinnati, Ohio, and were rejected by appellants. The breach of contract on that date is shown by the following allegations in the original petition:

"That on the 19th day of May, 1919, plaintiff sent defendant following telegram: 'Quote early lowest fancy bright good keeping yellows.' That defendant received said telegram, and on May 20, 1919, replied to plaintiffs as follows: 'No yellows offer car good sound wax medium, size three fifteen.' And plaintiffs received said last-named telegram and on May 20, 1919, wired defendant as follows: 'Answering if stock clean bright full packages compares in size with commercial grade, ship. Wire car number contents.' Plaintiffs allege that defendant received said telegram and on the same day wired the plaintiffs as follows: 'Erie six ten nine six shipped to-day five thirty crates routed Iron Mountain to St. Louis'—and on said 20th day of May, 1919, loaded said car with 530 crates of wax onions, and delivered said car to the Texas Mexican Railway Company, at Laredo, Tex., and billed same to plaintiff at Cincinnati, Ohio, and attached a draft to the bill of lading, and drew on plaintiffs for the price that plaintiffs agreed and contracted to pay for a car of 530 crates of good, sound wax onions, and that when said draft and bill of lading was presented to plaintiffs at Cincinnati, Ohio, said car of onions had not arrived; but plaintiffs, relying on the promise of defendant to ship the kind of onions ordered, to wit, wax onions of commercial grade and soundness, paid defendant on said draft and bill of lading the sum of $1,671.16 on the 24th day of May, 1919.

"Plaintiffs allege that defendant agreed, bound, and obligated itself to deliver to plaintiffs good, sound wax onions of commercial grade, but that, notwithstanding said agreement, promises, and obligation made by it, the defendant failed and refused to deliver good, sound onions to plaintiffs, and wholly breached its contract with plaintiffs, in that the onions it offered to plaintiffs on the 28th day of May, 1919, at the city of Cincinnati, Ohio, were not sound, as 50 per cent. of the onions were decayed, mostly due to slimy soft rot, and had black mold, and as said onions were not sound, as defendant had agreed and promised and obligated itself to deliver to plaintiffs, they elected to refuse said car, and on the 28th day of May, 1919, wired defendant that onions showed decay, and plaintiffs could not accept,' and asking defendant to wire disposition of car of onions; that plaintiffs did not accept said car of onions, or any part of same; that defendant made some disposition of said car, and these plaintiffs received no money from said car, and have never received from defendant any part of the said sum of $1,671.16 they paid defendant for said car of onions; that plaintiffs have often requested defendant to refund to them this money so paid by plaintiffs to defendant, and defendant has failed and refused, and still fails and refuses, to pay plaintiffs said sum of $1,671.16, or any part thereof, to plaintiffs' damage in the sum of $1,800."

In the second amended petition, after setting up a contract to deliver a car of "good, sound wax onions" and certain negotiation by wire between the parties, it was alleged:

"Plaintiffs allege: That facts above pleaded constitute a contract between plaintiffs and defendant, whereby defendant agreed to sell to plaintiffs good, sound wax onions of commercial grade, and that plaintiffs agreed to buy such onions from defendant. That plaintiffs did on May 24, 1919, pay to defendant on said draft and bill of lading the sum of $1,671.16. which was four days before the arrival of said car of onions in Cincinnati, Ohio. That such car of onions arrived in Cincinnati, Ohio, on the 28th day of May, 1919, and upon inspection by plaintiffs were found to be not sound, 50 per cent. of the onions being decayed, mostly due

to slimy, soft rot, and black mold. That after the inspection of said onions by plaintiffs, and by reason of the condition thereof, plaintiffs immediately on the 28th day of May, 1919, wired the defendant as follows: 'Erie six ten nine six here, shows heavy slimy nested decay stock unmerchantable. Made schedule time transit. Your wire twenty stipulated good sound wax. Sorry cannot accept. Government inspecting. Wire disposition quick. [Signed] Flatow, Riley & Company.' That in response to said telegram the defendant wired plaintiffs on the same day, May 28, 1919, as follows: 'Onions were good when they left here handle same my account. Make loss light as possible.' That, in response to said telegram by defendant, plaintiffs on the same day wired defendant as follows: 'Answering, confident you are mistaken condition when left. Your car yellows shipped practically same time arrived same train sound. Because heavy decay cannot handle whites. Your account show satisfactory returns. Advise other disposition quick. [Signed] Flatow, Riley & Company.' That on the same day, at a later time, plaintiffs sent the defendant a telegram as follows: 'Fearing did not understand our last wire reason cannot handle satisfactory, car needs immediate attention. Must be repacked entirely. Almost half our help sick so not prepared give necessary attention. [Signed] Flatow, Riley & Company.' In response to the foregoing telegram defendant wired plaintiffs as follows: 'Turn over car to some responsible party who is in position to handle advantageously. [Signed] Roy Campbell & Company.' That on the 29th day of May, 1919, defendant wired plaintiffs again as follows: 'Deliver car of onions Sandau & Company. [Signed] Roy Campbell & Company.' That in compliance with said instructions in said telegram contained plaintiffs notified Sandau & Co., and the said Sandau & Co. in response to said notification by plaintiffs and telegram from defendant went down and inspected said onions and refused to accept them."

The second amended petition is not clear in its allegations, but it appears that it is endeavoring to declare on a new contract made by appellee, on or about May 29, 1919, although there is some obscurity about it. It was alleged that a contract was made in lieu of the original contract, based on the telegrams between the parties, and that it constituted—

"a rescission of the contract of purchase and sale of said car of onions existing between defendant and plaintiffs, and defendant by virtue of said rescission became obligated and bound and contracted to pay to the plaintiffs the said sum of $1,671.16, which these plaintiffs had paid to defendant for said car of onions."

A recovery was sought in the second amended petition, not on the original contract to ship "good, sound wax onions," but on the breach of a contract to repay the money advanced by appellants on the onions, which followed an abrogation and cancellation of the original contract. The entering into a new contract is called "a rescis-

sion" of the old contract, and that such "rescission" bound appellee to repay the money. The word "rescission" is not found in the original petition, but the claim is based on a contract "to deliver good, sound wax onions," which appellee had breached by a failure to send such onions.

[1, 2] The test as to whether the two contracts are the same is that the same testimony would sustain each contract. Under the original petition appellants could not have recovered without proof that appellee had contracted to ship to them at Cincinnati a carload of "good, sound wax onions," and that he had shipped to them decayed and worthless onions; that $1,671.16 had been advanced on the onions and that appellee refused to repay that sum. Under the allegations in the second amended petition it was incumbent on appellants, in order to recover from appellee, to prove that the former had refused to accept the onions, and that appellee had promised to repay the sum of money advanced by appellants, or, to use the language of appellants, they had to prove that the facts pleaded constituted a rescission of the contract of purchase and sale of said car of onions existing between defendant and plaintiffs, and that defendant by virtue of said—

"rescission became obligated and bound and contracted to pay to these plaintiffs the said sum of $1,671.16, which these plaintiffs had paid to defendant for said car of onions."

The first contract sued on was one to deliver sound wax onions; the second was to pay a certain sum of money. Both undoubtedly grew out of the same shipment of onions, but the last petition did not declare upon the original contract, but alleged that the contract was abrogated and a new one made to repay certain money. The fact that the last promise grew out of the transaction alleged in the original petition did not make it any less a new contract, a new promise. The old contract set up in the first petition was abandoned, and a new contract in lieu of it was alleged in the second amended petition, which was filed more than four years after the new promise was made. The fact that the debt was the same would not answer the proposition that a new promise had been alleged, no more than an answer to the plea of limitation that a promissory note was given for the debt, which was afterwards set aside, and a new note given for the identical debt.

[3] While appellants admit that they are seeking a recovery on a promise which abrogated and destroyed the original contract, still, if the debt had not been barred by limitation, the allegations of the second amended petition fail to allege any promise to pay the debt, although it alleged that the original contract was destroyed by appellee's "rescission of the contract of pur-

chase and sale of said car of onions." It is admitted by appellants that the original contract was destroyed by the rescission and the promise to pay the money, and, as said by Black on Rescission and Cancellation, § 8:

"The important matter to be noticed in this connection is that, if a contract is rescinded by the making of a new agreement, all rights under the original contract are gone, and no claims can be founded upon it, either in respect to compensation for breach of the new contract or for injuries sustained under the old."

Black illustrates his text by a case very similar in its facts to this. Sparks v. Leavy, 19 Abb. Prac. (N. Y.) 364. The contract declared on in the second amended petition was totally different from that declared on in the original petition. Stoker v. Patton (Tex. Civ. App.) 35 S. W. 64; Ft. Smith v. Fairbanks Morse & Co., 101 Tex. 24, 102 S. W. 908.

The judgment is affirmed.