"If such independent school district shall have an outstanding bonded indebtedness, then the incorporated city or town shall become bound and liable for the payment of such bonded indebtedness."

Under that act, the city of Athens became liable for the $22,000 of school bonds outstanding when it assumed control. Of course, after assuming such control, the city itself, as a school district, issued the $125,000 of bonds, and is liable thereon.

Having assumed control of its schools, under the statutes of our state governing such matters, the city of Athens comes within section 3 of the act of 1921 aforesaid, and the $1.50 maximum tax rate which cities of that size may levy must care for the school bonds. The Legislature has the right, under the amendment of 1920 aforementioned, to prescribe the purposes for which such cities may levy taxes. It has spoken and included school buildings within the city

tax. Under the pleadings it seems clear that the Attorney General is justified in failing and refusing to approve the refunding bonds in the sum of $265,000. For this reason we think the writ of mandamus should not issue.

We do not wish to be understood as holding that no conditions could possibly arise under which a city like Athens would be authorized or compelled to levy a tax in excess of $1.50 on the $100. An interesting question might be presented should it be made to appear that the indebtedness sought to be refunded had been validly and lawfully incurred. We do not say what we would hold in such a situation. The record before us does not present any such status, and we do not pass upon the rule of law which might be applicable in such an extreme case which might arise. It will be time enough to pass upon that question when it is presented.

It seems clear to us that, as presented to the Attorney General, the record in this case does not show it to be his duty to approve the bonds. On the contrary, his duty to withhold such approval seems clear to us. Therefore we recommend that the writ of mandamus, as prayed for, be denied.

CURETON, C. J. The opinion of the Commission of Appeals is adopted and mandamus refused.

---

## FLATOW, RILEY & CO. v. ROY CAMPBELL CO. (No. 584–4406.)

(Commission of Appeals of Texas, Section B. Feb. 10, 1926.)

**1. Sales ⬤═396—Original petition held a suit upon implied promise of seller to repay buyer amount of draft paid on carload of onions, subsequently rejected.**

Original petition by buyer of carload of onions, which it refused, *held* not a suit for damages based on failure to comply with contract, but a suit upon implied promise of seller to repay to buyer amount of draft paid before refusal to accept onions.

**2. Sales ⬤═166(1)—Elements of contract wanting, where conditions in offer of purchase were never met.**

Where offer was to purchase onions of certain quality, and those shipped did not comply with offer, it may be reasonably inferred that elements of contract were wanting.

**3. Contracts ⬤═15—"Essence of a contract" is that minds of parties must meet on same thing.**

"Essence of a contract" is that minds of the parties thereto must meet on same thing, and intent or understanding of parties is necessarily an essential element.

4. **Sales**  ⟐⟐391(7)—**Payment for car of onions never delivered, without fault of buyer, implies promise of repayment.**

Where buyer had paid draft for car of onions which were never delivered, without fault on his part, there was implied promise on part of seller to repay sum on demand.

5. **Limitation of actions**  ⟐⟐127(4)—**Original petition filed six months after transaction, and amended more than four years after, held sufficient to prevent running of limitations, though bad on general demurrer.**

Where suit was filed less than six months after transaction occurred, original petition, though bad on general demurrer, and not amended until more than four years after transaction, *held* sufficient to prevent running of limitations.

6. **Limitation of actions**  ⟐⟐127(4)—**Original and amended petitions held to relate to same cause of action.**

Original petition in suit to recover money paid for carload of onions which was not accepted, and amended petition filed after limitations had run, *held* to relate to same cause of action.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Flatow, Riley & Co., against the Roy Campbell Company. Judgment in the Court of Civil Appeals (270 S. W. 883) affirmed a judgment of dismissal, and plaintiffs bring error. Reversed and remanded.

Mann, Neel & Mann, of Laredo, for plaintiffs in error.

J. D. Dodson and U. S. Algee, both of San Antonio, for defendant in error.

SHORT, J. The plaintiffs in error, a partnership, brought this suit in the district court of Webb county against the defendant in error, a private corporation, for the recovery of $1,671.16 paid by the plaintiffs in error to the defendant in error on a draft drawn by the latter on the former, with bill of lading attached, for a certain car of onions shipped by the defendant in error from Laredo, Tex., to Cincinnati, Ohio. Plaintiffs in error ordered a car of onions from the defendant in error by telegram from Cincinnati on the 19th day of May, 1919, specifying that the onions should be "stock clean bright full packages compare in size with commercial grade." In response to this telegram, the defendant in error shipped a car of onions from Laredo, Tex., to Cincinnati, consigned to the plaintiffs in error, and drew a draft for the amount sued for with bill of lading attached, which draft was paid by the plaintiffs in error four days before the car of onions arrived in Cincinnati. When the car of onions arrived at Cincinnati, the plaintiffs in error refused to accept them, and notified the defendant in error of this fact, stating, in effect, that they were not

the onions the defendant in error agreed to ship and for which the plaintiffs in error agreed to pay. The defendant in error having refused to refund the amount of the draft, on September 27, 1920, this suit was filed. On November 10, 1924, judgment was rendered by the trial court sustaining special exceptions filed to the second amended original petition of the plaintiffs in error, on the ground that this petition set up a new cause of action and that this cause of action was barred by the statute of limitation of four years. The original petition, as well as the second amended original petition of the plaintiffs in error, is substantially set forth in the opinion of the Court of Civil Appeals, 270 S. W. 883, which court, upon appeal of the plaintiffs in error affirmed the judgment of the trial court, and a writ of error having been granted by the Supreme Court, the same has been referred to this section of the Commission of Appeals for disposition.

The plaintiffs in error present three assignments and propositions under each, complaining of the action of the Court of Civil Appeals in sustaining the judgment of the trial court and in holding that the second amended original petition set up a new cause of action, different and distinct from that pleaded in the original petition. We do not deem it necessary to copy these assignments of error, since we note that they all relate to the same question of law, to the effect that the Court of Civil Appeals erroneously held that the original petition stated a cause of action for damages based upon a failure to deliver sound wax onions, and the second amended original petition was based upon a failure to pay a certain sum of money. In passing upon this question, it will only be necessary to discuss the original petition of the plaintiffs in error, since it seems to be admitted that the second amended original petition is sufficient to state a cause of action, and the question for decision is whether the original petition states, or attempts to state a cause of action distinct and different from that set up in the second amended original petition. The original petition alleges:

"That on the 19th day of May, 1919, plaintiffs sent defendant following telegram: 'Quote early lowest fancy bright good keeping yellows.' That defendant received said telegram, and on May 20, 1919, replied to plaintiffs as follows: 'No yellows offer car good sound wax medium, size three fifteen;' and plaintiffs received said last-named telegram, and on May 20, 1919, wired defendant as follows: 'Answering if stock clean bright full packages compares in size with commercial grade, ship. Wire car number contents.' Plaintiffs allege that defendant received said telegram and on the same day wired the plaintiffs as follows: 'Erie six ten nine six shipped to-day five thirty crates routed Iron Mountain to St. Louis;' and on said 20th day of May, 1919, loaded said car with 530 crates of wax onions, and de-

livered said car to the Texas Mexican Railway Company at Laredo, Tex., and billed same to plaintiffs at Cincinnati, Ohio, and attached a draft to the bill of lading and drew on plaintiffs for the price that plaintiffs agreed and contracted to pay for a car of 530 crates of good sound wax onions, and that when said draft and bill of lading was presented to plaintiffs at Cincinnati, Ohio, said car of onions had not arrived, but plaintiffs, relying on the promise of defendant to ship the kind of onions ordered, to wit, wax onions of commercial grade and soundness, paid defendant on said draft and bill of lading, the sum of $1,671.16, on the 24th day of May, 1919.

"Plaintiffs allege that defendant agreed, bound, and obligated itself to deliver to plaintiffs good, sound, wax onions of commercial grade, but that, notwithstanding said agreement, promises and obligation, made by it, the defendant failed and refused to deliver good sound onions to plaintiffs, and wholly breached its contract with plaintiffs, in that the onions it offered to plaintiffs on the 28th day of May, 1919, at the city of Cincinnati, Ohio, were not sound, as 50 per cent. of the onions were decayed, mostly due to slimy soft rot, and had black mold, and, as said onions were not sound as defendant had agreed and promised and obligated itself to deliver to plaintiffs, they elected to refuse said car, and on the 28th day of May, 1919, wired defendant that onions showed decay, and plaintiffs could not accept, and asking defendant to wire disposition of car of onions; that plaintiffs did not accept said car of onions or any part of same; that defendant made some disposition of said car, and these plaintiffs received no money from said car, and have never received from defendant, any part of the said sum of $1,671.16 they paid defendant for said car of onions; that plaintiffs have often requested defendant to refund to them this money so paid by plaintiffs to defendant, and defendant has failed and refused and still fails and refuses to pay plaintiffs said sum of $1,671.16, or any part thereof, to plaintiffs' damage in the sum of $1,800.

"Wherefore plaintiffs pray that defendant be cited to appear and answer herein, and for judgment for their debt, $1,671.16, together with interest, costs of suit, and such other and further relief, special and general, in law and equity, to which they may be justly entitled," etc.

The Court of Civil Appeals construes this petition to be a suit for damages based on a contract by the terms of which the defendant in error agreed to deliver to the plaintiffs in error sound wax onions, and the failure of the former to comply with its contract, whereby the latter were damaged in the amount sued for, while the second amended original petition was a suit based upon a contract whereby the defendant in error impliedly promised to pay to the plaintiffs in error a certain sum of money. If this construction of the two pleadings is correct, then the judgments of the Court of Civil Appeals and of the district court should be affirmed; otherwise, the judgments should be reversed.

[1, 2] According to the allegations of the original petition, on the 19th of May, 1919, the plaintiffs in error sought a quotation from the defendant in error of the price of a certain quality of yellow onions. To this telegram, the defendant in error replied that it did not have any yellow onions, but offered to sell plaintiffs in error a car of good, sound, wax medium, size three fifteen, onions. To this offer the plaintiffs in error replied by telegram that, if the onions offered were of a certain kind, which was named, to ship a car of them, and to wire the number and contents of the car. In response to this telegram, the defendant in error wired the plaintiffs in error that it had shipped on that day, which was the 20th of May, 530 crates of onions. A bill of lading with draft attached for the amount of money sued for was forwarded to Cincinnati, and, being presented to the plaintiffs in error, the draft was paid four days in advance of the arrival of the car of onions, which arrival was on the 28th of May, on which day, after the onions had been inspected, the plaintiffs in error wired the defendant in error that the onions showed decay, and therefore could not be accepted, requesting the defendant in error to wire disposition of the car, and that the defendant in error made some disposition of the car, and these plaintiffs received no money from said car, and have never received from defendant any part of the sum of $1,-671.16 they paid; refusal to repay said sum being alleged, and judgment being asked for the debt, together with interest.

This, in substance, is the statement of the transaction between the parties, and in our opinion, the original petition was, in effect, a suit, not for damages based upon the failure of the defendant in error to comply with a contract, but was a suit upon the implied promise of the defendant in error to repay to the plaintiffs in error the amount of the draft when the defendant in error disposed of the car of onions to other people, as alleged, after being told by the plaintiffs in error that they could not accept the onions for the reason stated. In this original petition is no allegation of the value of the onions actually sought to be delivered, and only an implied statement of the value of the onions sought to be purchased. Moreover, there is no allegation that any onions were ever delivered by the defendant in error to the plaintiffs in error. Upon the contrary, there is an express direct allegation that the plaintiffs in error had declined to accept a delivery, one of the things essential to complete the fulfilling of such a contract. It is alleged that they could not "accept" the onions, which means that they refused to consider the onions even a partial fulfillment of the terms of the proposed contract. In fact, it is a repudiation of their implied obligation by the plaintiffs in error to the defendant in error, arising out of the communication between them. It is alleged that the defendant

in error accepted this situation, and made some disposition of the onions. It is then alleged that, notwithstanding these' facts, the defendant in error, not only kept the onions, but appropriated the money which the plaintiffs in error had paid, under the idea that the onions contained in the car were in fact the onions they intended to buy. Had the original petition contained the allegation that the plaintiffs in error had appropriated the onions, but that they had no market value, we would have a different situation from that presented by the record. Upon the contrary, it is apparent that the offer made by the plaintiffs in error to purchase onions' was a conditional one, and that the conditions named in the offer were never met, from which it may be reasonably inferred that the elements of a contract were wanting.

· [3, 4] The essence of a contract is that the minds of the parties thereto must meet on the same thing, and the intent or understanding of the parties is necessarily an essential element. The plaintiffs in error agreed to purchase and pay for a car of a certain kind and quality of onions. According to the allegations in the original petition, no such onions were ever offered to be delivered to them. Assuming these allegations on this subject to be true, as we must, the plaintiffs in error never made any contract with the defendant in error to purchase and pay for the onions actually offered to them at Cincinnati on the 28th day of May, 1919, and the plaintiffs in error were strictly within their rights in refusing to accept that which they had not agreed to buy and pay for. The onions in the car reaching Cincinnati on May 28th, under the allegations of the original petition, belonged to the defendant in error, and so belonging it made disposition of the onions to others than the plaintiffs in error. The latter having paid to the defendant in error a sum of money for a car of onions which were never delivered without fault on their part, there was implied promise on the part of defendant in error to repay this sum upon demand, and, that demand having been made in vain, the plaintiffs in error had a right to invoke the aid of the courts to enforce it. Much has been said in the briefs of the parties about the law of the rescission of contracts, and the Court of Civil Appeals seems to have been of the opinion that the discussion of this law was applicable to the facts in this case, but we have serious doubts whether there was ever any contract made between these parties which was mutually binding upon them until the plaintiffs in error paid to the defendant in error this sum of money under the circumstances above detailed, upon which payment and the transpiring of the events immediately following there arose an implied promise on the part of defendant in error to repay the money with interest from the time it was received.

[5] It may be true that the original petition is subject to demurrer, and yet, if this be true, the suit having been filed less than six months after the transaction occurred, even though the original petition was bad on general demurrer and although this petition was not amended until more than four years had elapsed after the transaction occurred, it was sufficient to prevent the running of the statute of limitation. In Killebrew v. Stockdale, 51 Tex. 532, which was a suit on some promissory notes, the original petition did not allege the ownership of the notes in the plaintiff, and was therefore bad on general demurrer. Subsequently the petition was amended, supplying the defects in the original, but after more than four years had elapsed. Our Supreme Court held that an exception such as was leveled at the petition and sustained by the trial court in this case was properly overruled.

In the case of Burton-Lingo Co. v. Beyer, 78 S. W. 248, 34 Tex. Civ. App. 276, the court said:

"Both the original petition and the amended petition evidently declared on the same transaction, and differed only as to the terms and effect of the contract. If the original petition did not accurately or fully state the contract, it was the office of an amendment to make the correction."

[6] And in this case the second amended original petition, as well as the original, evidently declared on the same transaction. The prayer was exactly the same. It asked judgment for the debt, naming it, together with interest, costs of suit, and that the plaintiffs in error be given general relief. As we have once before said, the elements of a suit for damages were wanting in the allegations contained in the original petition, and there is no pretense that the allegations in the amended petition justified the conclusion that the plaintiffs in error were suing for damages. In both the original and the amended petitions, the identity of the transaction is not lost, and the defendant in error was sufficiently put on notice of the basis of suit by the allegations in the original petition. In Tarkinton v. Broussard, 51 Tex. 550, our Supreme Court says:

"Though the petition may be subject to special or general demurrer, yet, under our practice, if the suit is founded upon a proper cause of action, described therein with such certainty as to reasonably apprise the defendant of the same, an amendment will relate back to the date of the commencement of the suit. It has been decided at the present term that such petition is sufficient to stop the running of the statute of limitations. Killebrew v. Stockdale [51 Tex. 532]. A petition so defective as not to show that the court had jurisdiction even may be cured by amendment. Ward v. Lathrop, 11 Tex. 291; Evans v. Mills, 16 Tex. 199."

See, also, Boyd v. Beville, 44 S. W. 287, 91 Tex. 439; Cotter, Trulove & Co. v. Parks,

16 S. W. 307, 80 Tex. 539; Railway Co. v. Mitten, 36 S. W. 283, 13 Tex. Civ. App. 653; Railway Co. v. Clippenger, 106 S. W. 155, 47 Tex. Civ. App. 510; Gilliland v. Ellison (Tex. Civ. App.) 137 S. W. 168. All of the cases last cited have been discussed and approved by Presiding Judge Powell of this section of the Commission in Fuller v. El Paso Times Co., 236 S. W. 455. See, also, Thouvenin v. Lea, 26 Tex. 612. The holding in this last case has been cited and approved in Phœnix Lumber Co. v. Houston Water Co. (Tex. Civ. App.) 59 S. W. 555, which holds that an amendment seeking recovery on the same state of facts states no new cause of action.

Because it is our opinion that the Court of Civil Appeals erred in affirming the judgment of the district court of Webb county, which sustained an exception to the second amended original petition of the plaintiffs in error on the ground that it set up a cause of action, different from that set up in the original petition, more than four years after the alleged cause of action accrued, we recommend that the judgment of the Court of Civil Appeals be reversed, as well as that of the trial court, and that the cause be remanded for further proceedings not inconsistent with this opinion.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.